[No. D013876. Fourth Dist., Div. One. June 30, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD GLEN NYSTROM, Defendant and Appellant.

**COUNSEL**

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Keith I, Motley and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, Acting P. J.**—The court sentenced defendant Ronald Glen Nystrom to state prison for the lower term of two years after he pleaded guilty to a charge of auto theft (Veh. Code, § 10851, subd. (a)) and ordered him to pay $12,866 to the victim. Nystrom challenges this restitution order on a variety of grounds. We strike the reference to Penal Code section 2085.5 and as modified affirm the judgment.

### FACTUAL BACKGROUND

On August 23, 1990, about 8:30 a.m. the police received a report of a burglary at Goldbank Motors in San Diego. A glass window to the owner's office had been broken and a lock to the garage door had been pried off. The following were reported missing: cash of about $8,000 from a car sale the previous day which was kept in a desk drawer; a cash box containing about $1,200; another cash box containing about $6,000; a briefcase holding Arizona car titles and dealer work sheets; and a 1985 Audi 5000S.

While officers were still at the burglary scene, the police received a call from a gas station attendant in Pacific Beach regarding an intoxicated male in a car at his station. En route to the gas station the officers learned the car was reported as stolen. The car turned out to be the Audi taken from Goldbank Motors, and the intoxicated male was Nystrom. The police found $1,151 in Nystrom's possession. Nystrom had damaged the car in a hit-and-run accident.

### DISCUSSION

The issues here center around the restitution order. California is among those states which have enacted restitution programs pursuant to which the criminal offender must pay the victim "direct restitution" and/or society a "restitution fine." Government Code section 13967, subdivision (a) provides that a restitution fine may not exceed $10,000.[1] Before 1989, subdivision (c) of that same section similarly limited the amount of direct restitution to

---

[1]Government Code section 13967 provides in part:

"(a)   Upon a person being convicted of any crime in the State of California, the court shall, in addition to any other penalty provided or imposed under the law, order the defendant to pay restitution in the form of a penalty assessment in accordance with Section 1464 of the Penal Code and to pay restitution to the victim in accordance with subdivision (c). In addition,

$10,000. (*People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 996 [262 Cal.Rptr. 141].) In 1989, however, the California Legislature amended subdivision (c) to allow for restitution to "be imposed in the amount of the losses, as determined." (See Gov. Code, § 13967, subd. (c).)

I

■ Nystrom argues the direct restitution order must be stricken because he was not advised direct restitution, as opposed to a restitution fine, was a potential consequence of his guilty plea.

The plea bargain form provides in part:

"8a. I understand that I may receive this maximum penalty as a result of my plea: 4 years in State Prison, $20,000 fine and 60 months parole, with up to one year return to prison for every parole violation. . . .

"8b. My attorney has explained to me that other possible consequences of this plea may be:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(h) Restitution and/or a restitution fine. ($100-$10,000) . . ."

On its face, section 8b(h) necessarily encompasses both types of restitution: "restitution" as referring to direct restitution and/or a "restitution fine." Common sense indicates that the form would not have included both terms to refer only to a restitution fine. We believe Nystrom was afforded sufficient notice that one of the consequences of his plea could be direct restitution.

In any event, the Supreme Court's recent decision in *People* v. *Walker* (1991) 54 Cal.3d 1013 [1 Cal.Rptr.2d 902, 819 P.2d 861] makes clear that in the absence of a violation of the plea bargain, the court's failure to properly advise a defendant that restitution is a possible consequence of a guilty plea will not require relief unless the defendant objected to the restitution order at sentencing and can show prejudice as a result of the incomplete admonition. (*Id.* at pp. 1022-1023, 1029.) Here, Nystrom raised no objection and the plea

---

if the person is convicted of one or more felony offenses, the court shall impose a separate and additional restitution fine of not less than one hundred dollars ($100) and not more than ten thousand dollars ($10,000). . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"(c) In cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. . . . "

form specified a maximum fine of $20,000. (See *ante*, p. 1180) As was the case in *Walker*, the defendant has no basis for complaint where the total monetary liability (the combined amount of fines and restitution) does not exceed the maximum of which the defendant was advised. (See *Walker*, *supra*, 54 Cal.3d at p. 1029.)

The reasoning of *Walker* also requires that we reject Nystrom's alternate contention that the amount of restitution must be reduced because the plea form specified a $10,000 maximum. He argues that even though the 1989 amendment to Government Code section 13967, subdivision (c) removed the dollar restriction on direct restitution, section 8b(h) of the plea agreement form he signed continues to reflect the dollar limitation "($100-$10,000)" for both direct restitution and a restitution fine. (*Ante*, p. 1180.) Read as a whole, however, the form advised Nystrom that his maximum monetary liability might be as much as $30,000 ($20,000 penalty fine plus $10,000 restitution and/or restitution fine) in addition to a prison term. His failure to object to the amount of restitution and the lack of prejudice preclude his complaining about the $12,866 restitution order at this juncture.

## II

■ Nystrom next asserts the trial court improperly ordered the victim be given the $1,100 seized from Nystrom without holding a hearing on whether this money belonged to the victim. He relies exclusively on *People* v. *Chabeear* (1984) 163 Cal.App.3d 153 [209 Cal.Rptr. 218] as authority for the proposition that a defendant must be given notice and an opportunity to be heard before any money seized from him can be released to a victim. His reliance on *Chabeear*, however, is misplaced.

In *Chabeear*, the police seized money from a defendant during an arrest and search of his residence. The defendant was later convicted of a Health and Safety Code violation pursuant to a negotiated plea that dismissed a robbery charge. Before defendant's sentencing, the robbery victim claimed money was taken from him during the robbery. The court followed the probation officer's recommendation by reimbursing the victim with the money seized by the police. On appeal, the court reversed the order releasing the funds because the defendant was not afforded notice and an opportunity to be heard in opposition to the victim's claim. (163 Cal.App.3d at p. 155.)

Nystrom contends the same principles apply here: he should have been afforded notice and a hearing before the seized money was released to the victim. In contrast to *Chabeear*, however, the court in this case had already entered a valid restitution order as part of the negotiated plea. There was,

therefore, no question that the victim was entitled to the money and it was unnecessary to prove that the money seized from Nystrom actually belonged to the victim. (See *Chabeear, supra*, 163 Cal.App.3d at p. 155 [Funds seized from a defendant are presumed to belong to him "unless the government can prove that they belong to someone else"].) Nystrom was not entitled to notice and another hearing before the court ordered payment of restitution from available funds.

## III

■    Nystrom also contends the restitution award must be reduced by the money the victim could have collected from his auto insurance company if he had filed an insurance claim for the damage to the Audi. He concedes there is no case law to support this proposition but argues by analogy the rule applicable to situations where the victim does file a claim. That rule states when a victim files a claim with an insurance company for damages suffered in connection with a crime and the insurance company reimburses the victim for the loss, the criminal defendant cannot be required to pay restitution to the insurance company because the insurance company is not the "victim" of the crime. (*People v. Williams* (1989) 207 Cal.App.3d 1520, 1523-1524 [255 Cal.Rptr. 778].) We reject the proffered analogy because here we are dealing with the direct victim of the crime who has not and will not file an insurance claim.

The purpose of restitution is to compensate victims of crimes for the pecuniary losses they have suffered. The Legislature has defined "pecuniary loss" as "expenses for which the victim has not and will not be reimbursed from any other source." (See Gov. Code, § 13960, subd. (d).) There is no mention of an affirmative duty on the part of the victim to exhaust all possible sources of reimbursement before claiming restitution. The only limitation on recovery is that the victim cannot obtain double reimbursement.

Here, the president of Goldbank Motors testified he had not and would not be reimbursed from any other source, specifically his insurance company. He explained the reasons for not filing a claim were because the damage was less than $3,000 and in any event it would have been the third accident of the year and would have resulted in the loss of his insurance policy.

Nystrom argues he should not be required to pay restitution for the amount covered by the insurance policy simply because the victim would have lost his policy had he filed a claim. The argument is unpersuasive. The victim testified he would not have filed a claim even had it only been his first or

second claim of the year because of the relatively small amount of the loss. There is certainly no requirement that such a claim be filed. The statute only requires the victim "has not and will not be reimbursed from any other source." From the criminal defendant's standpoint it is purely fortuitous that a victim may be insured for the loss. Surely the defendant should not be heard to complain if an insured victim chooses not to seek reimbursement from the insurance company in preference to receiving restitution from the party culpably responsible for the loss.

## IV

Finally, Nystrom argues the trial court erred in ordering that restitution be paid pursuant to Penal Code section 2085.5, which allows the deduction of up to 20 percent of a prisoner's wages to pay a restitution fine imposed under Government Code section 13967, subdivision (a). He contends the reference to the statute must be stricken because the trial court lacked authority to make such an order with respect to direct restitution. The Attorney General concedes the trial court's error. (See *People* v. *Rowland* (1988) 206 Cal.App.3d 119, 124 [253 Cal.Rptr. 190].) Accordingly, the restitution order must be modified to delete the reference to Penal Code section 2085.5.

## DISPOSITION

The restitution order is modified to delete the reference to Penal Code section 2085.5. As modified, the order and judgment are affirmed.

Todd, J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 23, 1992.