[No. H010102. Sixth Dist. July 15, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES ROBERT BECK, Defendant and Appellant.

## COUNSEL

Marisa Nayfach, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Catherine A. Rivlin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PREMO, Acting P. J.**—On February 18, 1992, defendant Charles Robert Beck was charged by information with nine counts of grand theft (Pen. Code, §§ 484, 487, subd. 1; counts 1-9), one count of securities fraud (Corp. Code, § 25401; count 10), and two counts of tax evasion (Rev. & Tax. Code, § 19406; counts 11-12). The information further alleged that appellant was ineligible for probation because the loss in count 1 exceeded $25,000 and that in count 2 exceeded $100,000 (Pen. Code, § 1203.045).

Appellant pleaded not guilty and denied the special allegations.

On March 23, 1992, appellant entered a negotiated plea of no contest to eight counts of grand theft (counts 1-8) and one count of tax evasion (count 11); he also admitted the special allegations. Counts 9, 10, and 12 were dismissed. However, appellant stipulated that the dismissed counts could be considered at sentencing.

The court sentenced appellant to a prison term of two years on count 2, plus an enhancement of two years for the special allegation. Concurrent two-year terms were imposed on all the other counts to which appellant had pleaded no contest. The court further ordered appellant to pay direct restitution to the citizen victims and the California Franchise Tax Board (hereafter, Tax Board). Restitution to the Tax Board included payment for unpaid taxes under count 12, which had been dismissed.

We reverse in part and remand for a redetermination of restitution amounts as to counts 1 and 2. In all other respects, we affirm.

## Facts

Except to the limited extent indicated in our discussion, *post*, the facts of the underlying offenses are not important to the issues raised on appeal. It is sufficient to state that between June 1989 and December 1991, appellant convinced relatives and friends to invest in nonexistent business ventures. In most of the cases, appellant represented to his victims that he was in the business of buying blocks of airline tickets or travel packages at big discounts and reselling them to travel agents at large profits. Appellant had previously been legitimately engaged in such a business, and some of the victims had profitably invested with him in the past. In some of the cases, appellant represented to his victims that he was forming a company to market household poison kits. To convince his victims that the business ventures they were investing in were existing and genuine, appellant showed them false documents.

## Contentions

Appellant contends:

1. The abstract of judgment does not accurately reflect the oral pronouncement of sentence on the issue of restitution; therefore, there was no valid order of restitution.

2. The trial court improperly ordered restitution as to the dismissed counts.

3. The restitution award is invalid since Government Code section 13967, subdivision (c)[1] does not authorize restitution for purely economic injury.

4. The restitution order as to the Tax Board is not authorized by section 13967, subdivision (c).

5. In any event, the restitution order exceeds the amount allowed by statute.

6. The amount of restitution ordered to the Nelsons (count 2) reflects an error in addition.

---

[1]Further statutory references are to the Government Code unless otherwise stated.

## DISCUSSION

### Validity of Restitution Order

The trial court made its restitution order in this case by "specifically order[ing] the amounts listed on page 9 of the probation report to the named victims." Appellant points out that page 9 of the probation report says nothing about restitution, and that the probation officer's recommendation on restitution is in fact found on page 19 of the report.

█ Appellant contends that by referring to the wrong page, the court did not make a valid restitution order, and therefore the abstract of judgment, which orders restitution "as set forth in Page 19 of the Probation Report," is not reflective of the court's oral pronouncement, and should thus be amended by striking any reference to restitution.

The contention is devoid of merit. The reference to page 9 in the oral pronouncement is patently a case of harmless clerical error, which could have resulted from the reporter mishearing the court, or the court misreading the page number, or the reporter mistranscribing her notes, or any other form of typographical slip. Whatever the source, the error is inconsequential and cannot be a ground to disturb the judgment.

If, as pointed out by appellant, the probation officer's discussion on restitution is found not on page 9 but on page 19 of his report, then "page 9" in the court's oral pronouncement should read "page 19," because it is to that page that the court in fact intended to refer in its restitution order.

As stated in *People* v. *Smith* (1983) 33 Cal.3d 596, 599 [189 Cal.Rptr. 862, 659 P.2d 1152]: " '[W]hen . . . the record is in conflict it will be harmonized if possible; but where this is not possible that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence [citation]. . . .' [Citations.]" In this case, the "origin and nature" of the restitution order unmistakably point to page 19 as the correct page number.

Appellant's reliance on *People* v. *Packard* (1982) 131 Cal.App.3d 622, 628 [182 Cal.Rptr. 576], is misplaced. In that case, the court in fact rejected defendant's contention of want of jurisdiction based on certain discrepancies in the clerk's minute order "because the record shows these were merely clerical errors." (*Ibid.*)

### Harvey Waiver

As stated, counts 9, 10, and 12 were dismissed, with the stipulation that the court could consider them for sentencing.

With respect to count 9, the probation report stated that between August and December 1990, Tom and Cathy Harlan made investments with appellant. At year's end, their total loss was $4,500, no part of which was recovered.

With respect to count 12, the probation report stated that appellant had failed to pay the Tax Board $12,852 in taxes in 1990.

 Appellant contends the trial court improperly ordered restitution on counts 9 and 12 because those counts had been dismissed. Appellant cites section 13967, subdivision (a), which states that restitution shall be ordered "upon a person being convicted of any crime," arguing that since counts 9 and 12 had been dismissed, he was not convicted thereunder. The contention is without merit.

 In *People* v. *Harvey* (1979) 25 Cal.3d 754, 758 [159 Cal.Rptr. 696, 602 P.2d 396], it was held that while "[i]mplicit in . . . a plea bargain . . . is the understanding . . . that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count," such adverse sentencing consequences may properly be imposed if there was agreement to the contrary. This "contrary agreement" proviso is what has since been called a *"Harvey* waiver." (*People* v. *Goulart* (1990) 224 Cal.App.3d 71, 80 [273 Cal.Rptr. 477].) *Goulart* held that "[a] defendant who signs the typical waiver form agrees to allow the sentencing judge to consider his entire criminal history, including any unfiled or dismissed charges. [Citation.]" (*Ibid.*)

 Appellant argues that a *Harvey* waiver applies only to counts not dismissed. We disagree.

Pursuant to Penal Code section 1192.3: "(a) A plea of guilty or nolo contendere to an accusatory pleading charging a public offense, . . . which public offense did not result in damage for which restitution may be ordered, made on the condition that charges be dismissed for one or more public offenses arising from the same or related course of conduct by the defendant which did result in damage for which restitution may be ordered, may specify the payment of restitution by the defendant as a condition of the plea . . . , so long as the plea is freely and voluntarily made, there is factual basis for the plea, and the plea and all conditions are approved by the court. [¶] (b) If restitution is imposed which is attributable to a count dismissed pursuant to a plea bargain, as described in this section, the court shall obtain a waiver pursuant to People v. Harvey (1979) 25 Cal.3d 754 from the defendant as to the dismissed count."

This provision clearly recognizes that restitution ordered on dismissed counts is valid provided the plea under which payment of restitution is made a condition was "freely and voluntarily made, there is factual basis for the plea, and the plea and all conditions are approved by the court."

Here, as a condition to the dismissal of counts 9, 10, and 12, appellant stipulated that the dismissed counts could be considered for sentencing. In addition, the record shows that appellant in fact specifically agreed that restitution be paid for the dismissed counts, as clearly demonstrated by the following colloquy during the sentencing hearing on July 9, 1992: "MR. LETTUNICH [counsel for appellant]: Your Honor, my understanding is that the—

"Ms. WAKSHULL [deputy district attorney]: And who is the defendant's brother-in-law.

"MR. LETTUNICH: No. No. I understand. But we—also part of the court ruling that—when we entered the plea, Your Honor, was that *even the victims that were not charged*—

"THE COURT: That's correct.

"MR. LETTUNICH: —*we were responsible for restitution to*." (Italics added.)

Because restitution on the dismissed counts was part of the plea bargain and was a condition of appellant's plea, and there being no dispute that appellant's plea was freely and voluntarily made, had factual basis, and was approved by the court, the court did not err in ordering restitution on counts 9 and 12.

### Restitution for Economic Loss

■ Appellant contends the entire restitution award should be stricken because section 13967, subdivision (c), does not authorize restitution for purely economic losses. In support of this contention, appellant argues that while section 13967 allows restitution for economic losses, such restitution is to "victims" only, and "victim" is narrowly defined to include only those persons who "sustain injury or death as the direct result of a crime." Appellant adds that under section 13960, "injury" includes "physical or emotional injury, or both," but not property damage or monetary loss.

We are not persuaded. The courts have consistently applied section 13967, subdivision (c), to allow restitution for economic losses.

We start with *People* v. *Serna* (1988) 203 Cal.App.3d 728 [249 Cal.Rptr. 861]. In that case, it was held that "Government Code section 13967 is designed to compensate crime victims for economic losses suffered as a direct result of a crime," and that "[i]t accomplishes that goal by providing both for restitution fines and for direct restitution payments to victims." (*Id.* at p. 730.)

At the time of the *Serna* decision, the 1986 version of section 13967, subdivision (c), was in effect. That version provided that "restitution shall be imposed in the amount of the losses, but not to exceed ten thousand dollars." (Stats. 1986, ch. 1438, § 1.) Pursuant to that provision, the *Serna* court held that "the court may impose both a restitution fine and order restitution to the victim provided the total amount does not exceed $10,000." (*People* v. *Serna, supra,* 203 Cal.App.3d at p. 731.)

In 1989, and again in 1990, subdivision (c) of section 13967 was amended to remove the $10,000 limit for direct restitutions. As amended in 1990, section 13967, subdivision (c) read in pertinent part: "In cases in which a victim has suffered *economic loss* as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. Notwithstanding subdivision (a), restitution shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. . . . [¶] Restitution ordered pursuant to this subdivision shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim, or victims, for all determined *economic losses* incurred as the result of the defendant's criminal conduct." (Stats. 1990, ch. 45, § 2, italics added.)

In *People* v. *Cotter* (1992) 6 Cal.App.4th 1671, 1675 [8 Cal.Rptr.2d 606], the court, construing the 1990 version of section 13967, subdivision (c), stated: "It is apparent from the 1990 version of subdivision (c) of section 13967 that full, unlimited restitution to be paid directly to a victim is possible, indeed, preferred: '. . . in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. . . . [R]estitution shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. . . .' "

*Cotter* was a prosecution for attempted murder and residential burglary; therefore, the restitution allowed in that case presumably included economic losses resulting from the burglary.

Even more precedential was *People* v. *Nystrom* (1992) 7 Cal.App.4th 1177 [10 Cal.Rptr.2d 94]. In that case, the defendant pleaded guilty to a charge of auto theft. No personal injuries were involved. Following the defendant's guilty plea, the court ordered the defendant to pay direct restitution to the victim for the victim's property losses. In affirming the trial court's restitution order, the *Nystrom* court stated: "The purpose of restitution is to compensate victims of crimes for the pecuniary losses they have suffered. The Legislature has defined 'pecuniary loss' as 'expenses for which the victim has not and will not be reimbursed from any other source.' [Citation.] There is no mention of an affirmative duty on the part of the victim to exhaust all possible sources of reimbursement before claiming restitution. The only limitation on recovery is that the victim cannot obtain double reimbursement." (*Id.* at p. 1182.)

Still more recently, in *People* v. *Foster* (1993) 14 Cal.App.4th 939 [18 Cal.Rptr.2d 1], where the defendant was found guilty of residential burglary, the court affirmed the order to pay to the victim direct restitution in the amount of $8,000, which represented the original cost of a Persian rug for which the victim had received no payment from the insurance company.

In ordering restitution for this purely economic loss, the court noted that Penal Code sections 1203.1 and 1203.04 govern when restitution is imposed as a condition of probation, and that section 13967 governs when probation is denied. Explaining that the two statutory schemes serve different purposes, the court stated: "When restitution is imposed as a condition of probation under section 1203 et seq., rehabilitation of the criminal is the primary goal of restitution. [Citation.] 'Implicit in the concept of rehabilitation is the need to first deter criminal activity. Courts have generally found an order requiring the defendant to compensate the victim to be a deterrent to future criminal activity. [Citations.]' [Citation.] [¶] In contrast, 'Government Code section 13967 is designed to compensate crime victims for *economic losses* suffered as a direct result of a crime.' [Citations.] Although rehabilitation of the criminal is an ancillary purpose of a restitution award under this section, the primary purpose is to compensate California residents who suffer loss as a result of crime." (*People* v. *Foster, supra,* 14 Cal.App.4th at p. 950, italics added.)

In conclusion, we are of the view, and so hold, that under section 13967, subdivision (c), a court may order direct restitution to crime victims for purely economic losses.

### Tax Board as Victim

█ Appellant contends next that the restitution order to the Tax Board is unauthorized because section 13967, subdivision (c), authorizes direct restitution to natural persons only.

This issue is currently before the California Supreme Court in *People* v. *Broussard* (1990) 13 Cal.App.4th 330 [2 Cal.Rptr.2d 22] review granted February 13, 1992 (S024399), *People* v. *Gregg* (1992) 15 Cal.App.4th 461 [3 Cal.Rptr.2d 574] review granted May 14, 1992 (S025914), and *People* v. *Crow* (1992) 15 Cal.App.4th 1459 [6 Cal.Rptr.2d 574] review granted July 9, 1992 (S026536). However, none of the above cases discusses the issue from a constitutional point of view. We think the constitutional argument is both compelling and dispositive.

Article I, section 28, of the California Constitution, also known as Proposition 8, which was adopted as an initiative measure on June 8, 1982, provides in relevant part: "(a) . . . The People of the State of California find and declare that the enactment of *comprehensive* provisions and laws ensuring a bill of rights for victims of crime, including safeguards in the criminal justice system to fully protect those rights, is a matter of grave statewide concern. [¶] The rights of victims pervade the criminal justice system, encompassing not only the right to restitution from the wrongdoers for *financial losses* suffered as a result of criminal acts, but also the more basic expectation that persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody, tried by the courts, and sufficiently punished so that the public safety is protected and encouraged as a goal of highest importance. [¶] [] (b) Restitution. It is the unequivocal intention of the People of the State of California that *all persons* who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons *in every case*, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Italics added.)

Because the constitution speaks of "comprehensive provisions and laws," "restitution . . . for financial losses," and "[r]estitution . . . from the convicted persons in every case," the mandate is clearly to interpret implementing statutes broadly and liberally to the end that the "unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution," may be served. It will not be in keeping with that "unequivocal intent" to hold that victims who are not natural persons are not within the meaning of Proposition 8.

One of the early cases to consider the scope of the terms "victim" and "person" as used in Proposition 8 and its implementing statutes (Pen. Code, §§ 1203.04, subd. (a), 1203.1) was *People* v. *Narron* (1987) 192 Cal.App.3d

724 [237 Cal.Rptr. 693]. In that case, the court stated: " '[I]n passing Proposition 8, the People of the State of California announced their 'unequivocal intention . . . that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary.' (Cal. Const., art. I, § 28, subd. (b).) To carry out this mandate, legislation was enacted which requires courts to impose restitution as a condition in all cases in which probation is granted. (Pen. Code, § 1203.04, subd. (a).) Restitution shall be made '(1) To the victim, if the crime involved a victim. . . . [¶] (2) To the Restitution Fund, if the crime did not involve a victim.' (*Ibid.*) [¶] We first note as a general proposition that restitution is not necessarily limited to persons. Neither Penal Code section 1203.1 nor section 1203.04 defines the term 'victim.' However, the policies of these provisions favor a definition which *includes the government* where it suffered loss flowing from a defendant's criminal conduct. Including the government as a potential 'victim' accords with the court's discretion to employ probation conditions which ensure 'that amends . . . be made to society for the breach of the law, .. . .' (Pen. Code, § 1203.1.) Moreover, the concept of restitution embodies not only the notion that people who suffer loss as a result of criminal activity should be compensated for those losses (Cal. Const., art. I, § 28, subd. (b)), but also a perception of the value of restitution as a 'deterrent to future criminality' [citation], and 'to rehabilitate the criminal.' [Citation.] Both aims are furthered by imposing a restitution condition in appropriate cases whether or not the victim is an individual. We therefore agree with the dictum that '[t]he government may be the beneficiary of [restitution] if it has incurred actual loss due to the crime, as in the instance of tax evasion or theft of government property, . . .' [Citations.]" (192 Cal.App.3d at pp. 731-732, italics added, fns. omitted.)

Although *Narron* was decided in the context of restitution as a condition of probation, no sound reason exists why the rationale of its analysis cannot be applied to a situation where, as here, restitution is ordered after denial of probation. Proposition 8 does not distinguish; we should not distinguish.

Appellant's attempt to dismiss the *Narron* analysis as *dicta* is unavailing. We cite *Narron* not for the disposition it made but for the strength of its logic. Nor are we impressed by appellant's argument that since section 13960 defines "victim" as a person who suffers physical or emotional injury or death, section 13967, subdivision (c), must be understood to refer to natural persons only because artificial entities, such as the Tax Board, cannot suffer bodily or emotional injury.

To begin with, we note that the chapter encompassing sections 13960 and 13967 is entitled "Indemnification of Private Citizens." This title heading immediately serves notice that restitution to victims other than *private citizens* is not to be governed by that chapter. The implication is that such restitution will continue to be governed by the jurisprudence existing at the time.

When section 13967, subdivision (c), was amended in 1989 to provide for unlimited direct restitution for losses suffered, including economic losses, restitution had been judicially understood to benefit governmental entities as well. Besides *Narron*, two earlier cases, *People* v. *Baker* (1974) 39 Cal.App.3d 550, 559 [113 Cal.Rptr. 248] and *People* v. *Burnett* (1978) 86 Cal.App.3d 320, 322 [150 Cal.Rptr. 126], had held that " '[t]he government may be the beneficiary of [restitution] if it has incurred actual loss due to the crime, as in the instance of tax evasion or theft of government property, . . .' [Citations.]" (*People* v. *Narron, supra,* 192 Cal.App.3d at p. 732.)

Accordingly, since the Legislature must be presumed to act "with full knowledge of the state of the law at the time" (*In re Misener* (1985) 38 Cal.3d 543, 552 [213 Cal.Rptr. 569, 698 P.2d 637]), we must assume that the Legislature did not intend to disturb the decisional authority of *Narron* and its predecessors that the government is entitled to restitution, particularly in cases of tax evasion and theft of government property.

Furthermore, a close reading of sections 13960 and 13967, subdivision (c), reveals that those sections were intended not to narrow the definition of "victim," but to enlarge it to cover persons who ordinarily might not come under its terms. Thus, under section 13960, the term "victim" includes not only the "person who sustains injury or death as a direct result of a crime" (§ 13960, subd. (a)(1)), but also "[a]nyone legally dependent for support upon a person who sustains injury or death as a direct result of a crime" (§ 13960, subd. (a)(2)), "[a]ny member of the family of a victim . . . or any person in close relationship to such a victim . . ." (§ 13960, subd. (a)(3)), and "[i]n the event of a death caused by a crime, any individual who legally assumes the obligation, or who voluntarily pays the medical or burial expenses incurred as a direct result thereof" (§ 13960, subd. (a)(5)).

If restitution, by the extended definition of "victim" in section 13960, is proper for persons whose loss is only indirect in that such persons did not sustain the injury but only happened to be dependents of the injured, or members of the injured's family, or persons who assumed the dead victim's obligations, we fail to see how the Legislature could have meant to exclude direct victims of crimes themselves, just because they are artificial persons.

The suggestion that whether a convicted person can be required to pay restitution depends on the status of the victim (i.e., whether the victim is a natural or an artificial person) translates into saying that convicted persons may be required to pay restitution in some cases but not in every case. Such a suggestion does not comport with the unconditional mandate of Proposition 8: "Restitution shall be ordered from the convicted persons in every case."

Since we cannot impute to the Legislature an unconstitutional intent, we must conclude that sections 13960 and 13967, subdivision (c), do not preclude direct restitution to the Tax Board.

### Excess Restitution Amount

■ Appellant contends, and respondent agrees, that as to crimes committed prior to January 1, 1990, the restitution ordered in counts 1 and 2 exceeded the amount allowed by statute.

Prior to January 1, 1990, the 1986 version of section 13967, subdivision (c), placed a $10,000 cap on the amount of restitution which could be ordered. In *People* v. *Frey* (1989) 209 Cal.App.3d 139 [256 Cal.Rptr. 810], it was held that $10,000 is the maximum restitution which could be imposed upon a defendant, regardless of the number of victims or counts involved. To the same effect were *People* v. *Blakenship* (1989) 213 Cal.App.3d 992, 999 [262 Cal.Rptr. 141], and *People* v. *Sutton* (1989) 212 Cal.App.3d 1254, 1259 [261 Cal.Rptr. 194], and *People* v. *Serna, supra,* 203 Cal.App.3d 728.

By amendment in 1989, the $10,000 limit was removed effective January 1, 1990. (See Stats. 1989, ch. 712, § 1.)

In the instant case, the probation report indicated that the Lonardos' total loss was $68,000. This amount included the amount of $10,000 which the Lonardos gave to appellant on November 27, 1989, and another $5,000 which they gave to appellant on December 4, 1989. The same probation report stated that the Nelsons' total loss was $164,800. Of this amount, $95,500 was lost in 1989. Because the 1986 version of section 13967, subdivision (c), which governed the pre-1990 losses, did not allow a restitution fine or direct restitution to exceed $10,000, "regardless of the number of victims or counts involved" (*People* v. *Frey, supra,* 209 Cal.App.3d at p. 143), the trial court erred when it ordered direct restitution to the Lonardos and the Nelsons in excess of $10,000 for their 1989 losses. The restitution to those victims for their 1989 losses must not altogether exceed the total of $10,000. Restitution for losses occurring from and after January 1, 1990, is not affected by this pronouncement.

*Computational Error*

Appellant contends that the restitution amount of $164,800 awarded to the Nelsons in count 2 reflects an error in addition because the total sum of the losses itemized in the probation report as to the Nelsons is only $134,000. Respondent concedes, and we agree, that there is indeed a discrepancy of $30,000 between the sum of the losses itemized in the probation report and the restitution amount ordered by the court.

However, it is not clear whether the discrepancy is the result of a faulty addition, or of an erroneous copying of figures, or of an omission to include certain losses in the list. Because it is not possible to determine on this record if the error is mathematical or typographical, we remand to calculate the appropriate amount of restitution.

### DISPOSITION

The restitution order in counts 1 and 2 is reversed. In light of the computational discrepancy noted in count 2, and this court's determination that restitution amounts for monies taken prior to January 1, 1990, should not exceed $10,000, this matter is remanded to the trial court with direction to conduct appropriate proceedings to redetermine the correct restitution amounts in counts 1 and 2. In all other respects, the judgment is affirmed.

Elia, J., and Mihara, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 14, 1993. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.