Filed 6/13/13  P. v. Dunning CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062581 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF28873) |
| NICHOLAS DUNNING, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTON

Nicholas Dunning pleaded no contest to receiving stolen air conditioner parts (Pen. Code, § 496, subd. (a)). At the prosecution's request, in exchange for Dunning's plea and a waiver under *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*), the court dismissed numerous other charges and prior prison commitment allegations. The court sentenced Dunning to 16 months in jail. At a subsequent hearing, the court ordered him to pay direct victim restitution of $6,900.

Dunning appeals, contending the court abused its discretion in imposing direct victim restitution of $6,900 because the restitution included amounts unrelated to either the charge to which he pleaded no contest or the dismissed charges. We conclude this contention lacks merit and affirm the judgment.

BACKGROUND

The factual basis for Dunning's plea was an incident report prepared by Imperial County Sheriff's Investigator Edgar Quinones. The report stated Quinones contacted Wiley Walter while investigating several reported burglaries in the Salton City area. Walter told Quinones Dunning and another man stripped air conditioner condensers. Walter also told Quinones he and Dunning had taken air conditioner condensers stolen from homes in the Vista Del Mar area of Salton City to a recycling center. The recycling center paid them $60 for each one.

Quinones later drove Walter around the Vista Del Mar area, where Walter directed him to Penelope Avenue. Walter pointed out three homes on the street—1242, 1244, and 1250. Walter told Quinones he and Dunning had stolen air conditioner condensers and

2

pumps from two of the homes, although he could not remember which two. They had also taken a condenser from another home on 1377 Bering Avenue.

Quinones contacted the manager of the recycling center, who identified Dunning from a photograph. In addition, the manager provided Quinones with multiple photographs of Dunning with recycling items resembling air conditioner parts as well as receipts for amounts paid to Dunning for the items.

Quinones later checked the residences of 1242, 1244, and 1250 Penelope Avenue. The air conditioner condenser at 1242 Penelope Avenue was not missing. However, three panels from the wooden fence at 1244 Penelope Avenue had been removed, the air conditioner had been dismantled, and the condenser was missing. In addition, two panels from the wooden fence at 1250 Penelope Avenue had been removed and, although the air conditioner had not been dismantled, its condenser had been stripped and was missing.

Quinones also checked the Bering Avenue residence. Several panels from the property's wooden fence had been removed, the air conditioner had been dismantled, and the condenser was missing.

Quinones notified the property manager for 1244 Penelope Avenue of the theft. The manager also reported a similar theft of an air conditioner condenser at a residence on Court Avenue.

Quinones questioned Dunning about the thefts. Dunning admitted involvement in recycling scrap metal, but did not admit involvement in the thefts of the air conditioner condensers even though Walter told Quinones he and Dunning had stolen air conditioner condensers on five separate occasions.

3

The district attorney's office originally charged Dunning with grand theft and felony vandalism of the air conditioner at 1244 Penelope Avenue (counts 1 & 2), grand theft and felony vandalism of the air conditioner at 1250 Penelope Avenue (counts 3 & 4), grand theft and felony vandalism of the air conditioner at 1377 Bering Avenue (counts 5 & 6), and conspiracy to commit these offenses (count 7). After the district attorney's office later amended the complaint to charge receiving stolen property (count 8), Dunning pleaded no contest and entered a *Harvey* waiver for restitution purposes.

The officer who prepared the probation report submitted documents supporting restitution of $6,900 to a bank that owned the properties located at 1240 and 1250 Penelope Avenue. The documents included a claim for a $3,000 air conditioner and a $900 water heater stolen from 1250 Penelope Avenue and a claim for a $3,000 air conditioner stolen from 1240 Penelope Avenue. A representative of the bank informed the probation officer that 1240, rather than 1244, was the correct address of the property at issue in counts 1 and 2 of the complaint.

At the restitution hearing, the bank's representative testified the report the bank submitted to the sheriff's department incorrectly listed the property missing the air conditioner as 1244 Penelope Avenue instead of 1240 Penelope Avenue. She also testified the contractor's invoices showed both the air conditioner and the water heater were missing from 1250 Penelope Avenue.

Defense counsel objected to any claimed restitution for the losses at 1240 Penelope Avenue and for the claimed water heater loss at 1250 Penelope Avenue as these losses were not mentioned in the police report and, consequently, were not within the

4

contemplated scope of the *Harvey* waiver. However, the court found the *Harvey* waiver covered the course of conduct by Dunning and his accomplices. The court also found the reference to 1244 rather than 1240 Penelope Avenue was a clerical error. Accordingly, the court ordered restitution of $6,900, for which Dunning and his accomplices were jointly and severally liable.

## DISCUSSION

"[W]hen a defendant is convicted of a crime involving a victim who 'has suffered economic loss as a result of defendant's conduct' [citation], the court must require the defendant to pay full restitution directly to the victim or victims of the crime 'unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.' [Citation.] A 'defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution.' " (*People v. Giordano* (2007) 42 Cal.4th 644, 651-652.) "The scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited: ' "A defendant's due process rights are protected when the probation report gives notice of the amount of restitution claimed . . . , and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing." ' " (*People v. Cain* (2000) 82 Cal.App.4th 81, 86.) "We review the trial court's restitution order for abuse of discretion." (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1173.)

Dunning contends the trial court abused its discretion in this case by ordering him to pay the entire $6,900 in requested restitution because this amount included items not encompassed within his *Harvey* waiver. We conclude this contention lacks merit.

5

"In *Harvey*, pursuant to a plea agreement, the defendant pled guilty to two counts of robbery with the use of a firearm and a third count of robbery was dismissed. (*Harvey*, *supra*, 25 Cal.3d at p. 757.) In sentencing the defendant to the upper term, the trial court relied upon the dismissed robbery count as an aggravating factor. Our high court held that this was error stating, 'In our view, under the circumstances of this case, it would be improper and unfair to permit the sentencing court to consider any of the facts underlying the dismissed count three for purposes of aggravating or enhancing defendant's sentence. Count three was dismissed in consideration of defendant's agreement to plead guilty to counts one and two. Implicit in such a plea bargain, we think, is the understanding (in the absence of any contrary agreement) that *defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count*.' (*Harvey*, *supra*, at p. 758, italics added.) It was from the parenthetical in the quoted text that the notion of a Harvey waiver developed. (*People v. Goulart* (1990) 224 Cal.App.3d 71, 80 (*Goulart*).) 'A defendant who signs the typical waiver form agrees to allow the sentencing judge to consider his entire criminal history, including any unfiled or dismissed charges.' " (*People v. Snow* (2012) 205 Cal.App.4th 932, 936-937; *People v. Beck* (1993) 17 Cal.App.4th 209, 216; *People v. Baumann* (1985) 176 Cal.App.3d 67, 75.)

Indeed, the *Harvey* waiver to which Dunning agreed provided, "*The sentencing judge may consider* my prior criminal history and *the entire factual background of the case, including any unfiled,* dismissed or stricken *charges or allegations* or cases *when* granting probation, *ordering restitution* or imposing sentence." (Italics added.) Thus,

6

contrary to Dunning's assertion, his *Harvey* waiver expressly permitted the trial court to impose restitution for uncharged crimes.

Moreover, "[t]he standard of proof at a restitution hearing is preponderance of the evidence, not reasonable doubt." (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319.) The evidence before the trial court at the restitution hearing included Walter's statements to Quinones that: (1) Dunning stripped air conditioner condensers, (2) he had participated with Dunning in stealing air conditioner condensers on five separate occasions, (3) they acquired some of the air conditioner condensers from homes in the Vista Del Mar area, including homes on Penelope Avenue, and he had taken Dunning to the recycling center on at least five or six occasions. The evidence also included numerous photographs and receipts from the recycling center showing Dunning had recycled large piles of scrap material around the time period when the thefts were reported. Dunning did not dispute any of this evidence and the court could reasonably determine from it that, in addition to the charged and dismissed crimes, Dunning was also responsible for the uncharged thefts of the air conditioner at 1240 Penelope Avenue and the water heater at 1250 Penelope Avenue. Accordingly, Dunning has not established the court abused its discretion ordering him to pay the victim restitution for these items.

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

McINTYRE, J.

IRION, J.