Filed 7/18/25  P. v. Belloli CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084829 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE417917) |
| SEAN MICHAEL BELLOLI, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Herbert J. Exarhos, Judge.  Reversed with instructions.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Alana R. Butler and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

This is an appeal from a postjudgment order imposing victim restitution following a criminal conviction. In the underlying criminal case, Sean Michael Belloli pleaded guilty to one count of receiving stolen property in violation of Penal Code section 496, subdivision (a).[1] Following a restitution hearing, the trial court ordered Belloli to pay restitution to the victim, Michel's Pacific Energy, in the amount of $104,063.76. Belloli appeals the restitution order, contending he is only responsible for reimbursing the victim for the stolen property he possessed—spools of copper wire—and not all of the property taken by his codefendants. We agree. Accordingly, we remand to the trial court to determine the value of the copper wire.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2022, a commercial burglary took place at Michel's Pacific Energy in which the suspects forced entry through a locked fence and stole a 2022 Ford F550 from the storage yard. The truck was loaded with equipment and had an estimated value of over $83,000. Among the stolen items were three spools of copper wire.

Police identified Daniel K. Samsel from video footage of the burglary, and a search of his property led to the recovery of several stolen tools. At some point after the burglary, Samsel and Belloli recycled some of the stolen copper wire and received about $5,730 in return.

A felony complaint was filed in May 2023 against Samsel, Belloli, and codefendant Nicole Rae Samsel. The complaint charged both Samsels with two counts of burglary in violation of section 459 (first and third counts), two counts of grand theft of personal property in violation of section 487, subdivision (a) (second and fourth counts), and one count of unlawfully

---

[1]    Undesignated statutory references are to the Penal Code.

taking and driving a vehicle in violation of Vehicle Code section 10851, subdivision (a) (fifth count). Belloli was not named in counts one through five, but was charged with one count of receiving stolen property in violation of section 496, subdivision (a) (sixth count).

Belloli pleaded guilty to receiving stolen property and received a total sentence of four years in prison, with victim restitution to be determined at a later date.[2] At the outset of the restitution hearing, the prosecution stated they had shared the requested restitution amount with defense counsel, who responded he would need "an opportunity to run through the amount with [Belloli]." The defense subsequently filed an opposition to victim restitution, asking the court to deny restitution for the victim's stated loss of $104,063.76, which was the total loss from the burglary and theft. Belloli maintained he was only responsible for losses stemming from the crime he was convicted of—receiving stolen property. The hearing was continued to give the prosecution an opportunity to review the defense motion.

At the continued hearing, the prosecutor indicated he had provided defense counsel with a "restitution packet" ahead of time. This packet included a "line by line itemization" of the specific amounts requested by Michel's Pacific Energy, totaling $104,063.76. Defense counsel clarified they were not contesting the value of the total loss suffered by the victim, but were instead challenging Belloli's liability for portions of the loss resulting from crimes he did not commit.

The defense filed a second opposition to victim restitution, maintaining that Belloli was only responsible for the loss attributable to his conduct in receiving stolen property. Defense counsel represented that, according to

_____

[2]     This case (No. SCE417917) was resolved concurrently with Belloli's other pending, unrelated cases (Nos. SCE418229, SCE417934, SCE414073, SCE412639, and SCE417733).

3

records from a local recycling center, Belloli received $5,741.20 in exchange for more than 2,000 pounds of copper wire shortly after the burglary.

At the final restitution hearing, the prosecution declined to present a live witness since the defense was not contesting the amount claimed. As to Belloli's liability, the prosecution argued he was responsible for the total amount requested based on his alleged involvement in the burglary and theft and his possession of stolen items. Agreeing with the prosecution, the trial court found Belloli's liability for restitution was not limited to his charge before the court, but was instead inclusive of the burglary and theft. The court ultimately ordered Belloli to pay the full amount requested, $104,063.76, on the basis that he "was involved in the theft and the possession of all that stolen property."

## DISCUSSION

### A. *The trial court abused its discretion when it ordered Belloli to pay restitution for all of the property taken in the burglary.*

Belloli contends the trial court exceeded its authority because the final restitution order included losses arising from the initial burglary and theft for which he was not convicted and as to which there was insufficient proof of his involvement. In his view, an appropriate award would limit his share of restitution to the value of the stolen copper wire, which he concedes to be $5,730.[3]

We review restitution orders for an abuse of discretion. (*In re Alexander A.* (2011) 192 Cal.App.4th 847, 852; *People v. Giordano* (2007) 42 Cal.4th 644, 663 (*Giordano*).) "The abuse of discretion standard is not a

---

[3] In his opening brief, Belloli relies on the probation report in contending he received only $5,370 for the copper wire. However, on reply, he states the amount was $5,730. Both amounts presented differ from the $5,741.20 figure cited by defense counsel below.

4

unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.) The question we must address is whether the trial court exceeded its authority when it ordered Belloli to pay restitution for all of the victim's losses.

California crime victims have a constitutional right to full restitution for economic losses suffered as a result of a defendant's criminal conduct. (Cal. Const., art. 1, § 28, subd. (b)(13).) A victim's right to restitution is to be broadly and liberally construed. (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.)

The scope of restitution depends on the type of sentence the trial court imposes. Where a defendant is ordered to pay restitution as a condition of probation under section 1203.1, the defendant's agreement gives courts broader discretion to impose restitution, which they may do so as long as "the restitution condition [is] reasonably related either to the crime of which the defendant is convicted or to the goal of deterring future criminality." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1123.) Courts may order probationers to pay restitution for losses resulting from "related conduct not resulting in a conviction," as well as "conduct underlying dismissed and uncharged counts." (*Id.* at p. 1121.) This wider scope arises from the rehabilitative purpose of probation and allows trial courts to order restitution beyond what is permissible under section 1202.4, which applies where a defendant receives a nonprobationary sentence. (*People v. Martinez* (2017) 2 Cal.5th 1093, 1101 (*Martinez*); see also *People v. Anderson* (2010) 50 Cal.4th

5

19, 29 ["When section 1202.4 imposes its mandatory requirements in favor of a victim's right to restitution, the statute is explicit and narrow. When section 1203.1 provides the court with discretion to achieve a defendant's reformation, its ambit is necessarily broader"].)

Where, as here, a defendant is convicted and sentenced to custody, section 1202.4, subdivision (f), limits a court's power to impose restitution to the "economic loss[es]" incurred "as a result of the defendant's conduct." As the Courts of Appeal have consistently held, this provision "authorizes trial courts to order direct victim restitution for those losses incurred as a result of the crime of which the defendant was convicted." (*Martinez, supra,* 2 Cal.5th at p. 1101; see, e.g., *People v. Lai* (2006) 138 Cal.App.4th 1227, 1247–1248; *People v. Woods* (2008) 161 Cal.App.4th 1045, 1051–1052.) "A restitution order is not authorized if the defendant's relationship to the victim's loss is through a crime of which the jury acquitted the defendant, *which is equally true when the defendant is not charged with the crime.*" (*People v. Williams* (2017) 7 Cal.App.5th 644, 697, italics added; see also *People v. Jessee* (2013) 222 Cal.App.4th 501, 510 ["we conclude restitution may only be awarded for crimes the defendant is charged with and convicted of, even if the evidence shows beyond a reasonable doubt and the trial court finds the defendant committed an uncharged crime"].)

Because he was sentenced to prison, Belloli maintains the trial court could only order restitution for losses resulting from the crime of which he was convicted—receiving stolen property—not the unfiled charges of burglary and theft. The Attorney General does not seriously dispute Belloli's reading of the law on this point. Instead, he makes reference to the *Harvey* waiver[4] in the standard plea form that Belloli signed. The form included a paragraph

---

[4] See *People v. Harvey* (1979) 25 Cal.3d 754.

initialed by Belloli that read: "The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence."

The Attorney General appears to suggest that the *Harvey* waiver agreed to by Belloli may broaden the proper scope of restitution in this case to include crimes that were never charged (i.e., the underlying burglary and theft).[5] Belloli points out that even if this might be true as a matter of theory, there still must be sufficient evidence in the record that ties him to the loss of the truck and tools. Here, according to Belloli, there is none. We think Belloli has the better argument.

Both parties correctly point out that courts may apply tort principles of proximate causation when awarding victim restitution in criminal cases. (See *People v. Jones* (2010) 187 Cal.App.4th 418, 425.) In such cases, courts may only impose restitution to the extent a defendant's criminal conduct played a "substantial factor" in causing the victim's economic loss. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321–1322 (*Holmberg*); see also *People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396; *People v. Trout-Lacy* (2019) 43 Cal.App.5th 369, 372.) At a restitution hearing, the standard of proof is preponderance of the evidence, and the formalities required in other phases of a criminal prosecution do not apply. (*Holmberg*, at pp. 1319–1320.)

---

[5] The Courts of Appeal have upheld the application of *Harvey* waivers in calculating restitution awards in other circumstances. (See, e.g., *People v. Goulart* (1990) 224 Cal.App.3d 71, 80 [trial court's award for offenses which defendant was not convicted was affirmed because restitution was a condition of probation, not a penal consequence]; *People v. Beck* (1993) 17 Cal.App.4th 209, 215–216 [restitution order affirmed where defendant was sentenced to prison and restitution was ordered for dismissed counts pursuant to a *Harvey* waiver].)

Despite this relaxed standard of proof, we conclude there is insufficient evidence establishing a causal nexus between Belloli's conduct and the loss of the truck and other tools. Although it is unclear what evidence the trial court relied upon in concluding Belloli was involved in the initial theft, from our review of the record the best evidence to support the court's finding is the probation report. That report, however, includes two conflicting accounts, neither of which amount to the substantial evidence required to support the court's conclusion. In one account, Belloli "admitted to being at the junkyard where the theft of the copper wire spools occurred and that they came from a work truck and were loaded onto another truck." In another, "[h]e denied being the one who stole the items from Michel's Pacific Energy" instead claiming he "was at a nearby junkyard when the theft occurred" and "was only asked to help recycle the copper wire."

Even accepting the version of events most favorable to the court's finding, Belloli's mere presence at the junkyard and knowledge that the copper wire was transferred from one truck to another is insufficient to make him responsible for the theft or prove he was a substantial factor in the total loss. (See, e.g., *People v. Pettie* (2017) 16 Cal.App.5th 23, 57.) There is nothing to suggest Belloli personally took the truck full of tools, nor is there evidence that he encouraged or assisted the Samsels as they did so. As defense counsel pointed out at the restitution hearing, there is no indication Belloli ever saw the stolen tools at all. Indeed, the record does not even explain Belloli's relationship with the Samsels or how he came to be at the junkyard in the first place.

Moreover, there is no evidence that Belloli ever possessed any stolen items besides the copper wire. This distinguishes Belloli's case from *Holmberg, supra*, 195 Cal.App.4th 1310, on which the prosecution relied in

8

the trial court and on appeal. That case involved a string of commercial burglaries in which computers, hard drives, credit cards, and other items were taken. (*Id.* at pp. 1313–1314.) Holmberg was caught with some of the property taken but denied any involvement in the burglaries. (*Id.* at pp. 1314–1315.) Like Belloli, Holmberg was convicted under section 496, subdivision (a), sentenced to prison, and ordered to pay victim restitution. (*Id.* at p. 1313.) On appeal, he claimed he was not liable for any restitution because the victims' "losses were due to the burglary or theft and would have occurred without his conduct." (*Id.* at p. 1318.) The appellate court rejected the argument, concluding his "concealing of the stolen property was a concurrent cause in depriving the victims of the use of their property." (*Id.* at p. 1322.)

In so holding, the *Holmberg* court highlighted that the prosecutor never sought victim restitution based on the burglary or theft of property and instead explained to the trial court how each claimed loss related to Holmberg's conviction. (195 Cal.App.4th at pp. 1318, 1324.) Accordingly, the trial court did not award the full amount claimed by the victim, and instead awarded a lesser amount based on a careful determination of which losses resulted from Holmberg's concealment of property, rather than the burglary. (*Id.* at p. 1324.) The appellate court then modified the restitution order to strike what had been awarded to a victim for some stolen cables where there was no evidence Holmberg ever possessed the cables. (*Id.* at p. 1325.) *Holmberg* does not support the People's contention that Belloli was somehow a "concurrent cause" of the victim's loss and could be ordered to pay restitution for property—the truck and tools—that he never possessed.

There is thus inadequate evidence to support the trial court's order making Belloli responsible for the victim's total loss, even where the *Harvey*

9

waiver applies. Notably, the Attorney General concedes "that it is not clear from the record before this court whether [Belloli] was involved in the theft of the stolen property." He asks us to remand the matter to allow the prosecution to establish a causal connection between the victim's losses and Belloli's conduct. But we fail to see how the prosecution is entitled to a second bite at the apple when the scope of Belloli's liability for the victim's losses was clearly at issue below.

**B.** ***Remand is necessary to determine the replacement value of the copper wire.***

Having concluded the court exceeded its authority in ordering restitution for losses other than the copper wire, we must now determine the appropriate remedy.

Belloli acknowledges he must pay restitution for the losses resulting from his receipt of the stolen copper wire. He believes the proper remedy is to reduce the award to $5,730, "the amount that [he] is alleged to have received for the copper wire, and which constituted the only evidence of the wire's value presented" at the restitution hearings. The Attorney General, in contrast, believes $5,730 to be the *minimum* amount Michel's Pacific Energy is entitled to. But since that is the amount Belloli received from the recycling center, not the actual replacement value of the wire, he requests that we remand the matter for further proceedings to determine the replacement cost of the wire.

10

At a restitution hearing, the burden is on the party seeking restitution to provide an adequate factual basis for its claim. (*Giordano*, *supra*, 42 Cal.4th at p. 664.) The standard of proof is a preponderance of the evidence. (*Holmberg*, *supra*, 195 Cal.App.4th at p. 1319.) Once the party seeking restitution has made a prima facie showing of the victim's loss, "the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*People v. Prosser* (2007) 157 Cal.App.4th 682, 691.)

Here, the prosecution provided a "line by line itemization of the amounts being requested from the victims" in the form of a "restitution packet." Although both parties reviewed the restitution packet ahead of the final hearing, it remains unclear from the record whether the court itself ever saw or reviewed this document. The packet was not included in the appellate record, so we are unable to review its contents for ourselves. And because defense counsel made clear he was *not* contesting the amounts claimed—just whether Belloli was liable for all of the losses claimed or the copper wire alone—counsel apparently agreed there was no need for additional witness testimony regarding the losses.

Because the record is unclear as to the amount the prosecution was claiming for the copper wire alone, and that discrete issue was not fully litigated below, we think it appropriate to remand for further proceedings to determine the replacement value of the stolen copper wire. (See § 1202.4, subd. (f)(3)(A) [value of stolen property is the replacement cost of like property].)

## DISPOSITION

The order awarding restitution is reversed. On remand, the trial court is directed to conduct further proceedings consistent with this opinion to determine the replacement value of the stolen copper wire and modify the restitution award to that amount.

DATO, Acting P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.

12