[Crim. No. 6698. Second Dist., Div. One. Oct. 5, 1959.]

THE PEOPLE, Respondent, v. STEPHEN CHARLES THEODORE et al., Defendants; MICHAEL BUSCEMI, Appellant.

*Assigned by Chairman of Judicial Council.

238

Edward I. Gritz for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David B. Allen, Deputy Attorney General, for Respondent.

FOURT, Acting P. J.—This is an appeal from a judgment of conviction of violating the provisions of section 487, subdivision 1 of the Penal Code (grand theft).

In an information filed in Los Angeles County, the appellant, Buscemi, and three codefendants were charged with committing grand theft in violation of the section above mentioned. It was charged that personal property belonging to the May Company of a value in excess of $200 was taken from the company on or about May 13, 1958, and within a period of 12 consecutive months prior thereto while two of the codefendants, Williams and Kivo, were employed by the company. Each of the defendants entered a plea of not guilty and each defendant and counsel waived a jury trial, and by stipulation the cause was submitted on the transcript of the preliminary hearing and each side reserved the right to present additional evidence. All of the defendants were found guilty and appellant was sentenced to the state prison.

Appellant Buscemi has appealed from the judgment and "from the order denying his motion for a new trial."

A résumé of the facts is as follows: Joseph Downey was employed as a receiving clerk for the May Company until April 28, 1958. It was his duty to check merchandise received at the platform of a May Company warehouse. On January 28, 1958, he received and signed an invoice for a shipment of 15 cartons of shirts. He checked to see that the merchandise receipted for was there. After the items were checked against the invoice they were taken from the dock into the building by other personnel. On the same day, Downey signed an invoice for the receipt of 29 cartons of Presto cookers, after checking and ascertaining that such cookers were there. On February 11, 1958, Downey received and signed an invoice for the receipt of a carton of shirts after checking and ascertaining that the carton was there. On February 28, 1958, Downey received and signed an invoice for the receipt of six cartons of shirts, checking the cartons unloaded on the dock.

Arthur McLaird worked as a receiving clerk with the company and on May 13, 1958, received and signed invoices for two rugs.

When merchandise was received and the invoice for it was signed, the merchandise was then, in the ordinary course of business, moved into certain designated areas inside the building where it was rechecked for quantity and count, marked and price-tagged and then sent to stock areas in the building.

On each invoice there is a place for the checker's and the marker's signature.

At the marking area it was standard practice for the checker to sign the invoice when the merchandise was checked and for the marker to sign it when the goods were marked. There were no checkers' or markers' signatures on any of the four invoices heretofore mentioned. Those invoices reveal that the merchandise described therein did not arrive at the marking area. When those invoices were received by the checking and marking department they were given to a checker who in turn attempted to locate the merchandise. That checker was unable to locate the shipment and he turned the invoices back. John Drew was the manager of checking, marking and packing and he made an independent search for the merchandise which was described in the various invoices in question and he was unable to find the same.

The codefendants, Williams and Kivo, both worked for the May Company in the warehouse as receiving clerks on the

dock and neither of them had any authority to remove any merchandise from the premises.

On May 13, 1958, Police Detective Waggoner had the dock under surveillance and at that time he saw defendants, Theodore, Williams and Kivo. The officer saw a green truck circle the block about three times. The truck backed into the loading dock at the east end of the building and then went to the west end of the receiving dock. The defendant, Theodore, got out of the truck and talked with the defendant Williams and McLaird on the loading platform. Williams and McLaird went into the warehouse and returned shortly pulling a small dolly-like truck with two large rolls of carpeting thereon. The defendants, Theodore and Williams, loaded the rolls onto the truck and Theodore then drove off in the truck.

The officers followed the truck and apprehended Theodore. The two large rolls of carpeting were still on the truck.

After talking with Theodore, the officers went back to the May Company building and apprehended Williams and McLaird and took them to a police station. The police talked with Williams.

On the same date Officer Waggoner talked with Buscemi at a police station. Buscemi was asked, among other things, if he had made arrangements with Theodore to pick up some rugs from the May Company and appellant answered: ". . . I didn't have a thing in the world to do with it. . . ." He also stated that he had never sold anything to Theodore.

On the next day, May 14, the officers had Buscemi and defendants, Theodore and Williams, in a room at the detective bureau. The officers had them tell in their own fashion, freely and voluntarily, what had been occurring at the May Company warehouse. Theodore said, "We are dead. We might as well tell him the truth about it, because I want to clear this up." He further said that Buscemi had brought him merchandise consisting of shirts, sheets and furniture which were stolen from the May Company. He said that he paid Buscemi $150 for the furniture and that he was going to pay him $1.00 each for the shirts. Theodore also said, in front of Buscemi, that they had made arrangements with Williams to pick up the rugs and that he was going to split the profits with Buscemi after they sold the rugs.

During the questioning and after the other defendants talked of what had taken place, Buscemi said, "All right, I'll tell you what I took" and then proceeded to tell the officer what he had taken. Buscemi was not told that he would

get a "break," so to speak, if he admitted the theft of some of the articles. Buscemi stated that, among other things, he had taken items from the May Company dock, that he had made arrangements with Williams, that they had placed items on the truck and he had paid Williams later. He said he had taken a case of shirts and some Presto cookers.

The value of the rug referred to in one of the invoices was about $600. There were 94-8/9 square yards of carpeting with the retail value of about $6.00 per square yard. The value of another rug referred to in an invoice was about $268.40. One invoice referred to nine dozen short-sleeved shirts which cost the May Company $15.75 a dozen and retailed at $1.99 each, or a retail value of $214.92. Another invoice represented 18 dozen of one style shirts and eight and a third dozen of another style of shirts. The cost of these shirts was $924.68, and they had a retail value of $1,480.

Appellant asserts that: 1. The information fails to charge him with a public offense; 2. The court erred in receiving into evidence the appellant's admissions before the corpus delicti was established; and 3. The evidence is insufficient to sustain the conviction.

We have concluded that there is no merit to any of appellant's contentions.

■ The pertinent part of the information reads as follows:
". . . committed as follows:

"That the said STEPHEN CHARLES THEODORE, KENNETH ELMO WILLIAMS, MICHAEL BUSCEMI and RICHARD BENJAMIN KIVO or or about the 13th day of May, 1958, and within a twelve consecutive month period prior thereto and while the said defendants, KENNETH ELMO WILLIAMS and RICHARD BENJAMIN KIVO, were employees of May Company, at and in the County of Los Angeles, State of California, did willfully, unlawfully and feloniously take personal property of a value in excess of Two Hundred Dollars ($200.00), lawful money of the United States, the personal property of May Company."

As we read the information the appellant was accused of unlawfully taking property, worth in excess of $200 from the May Company. Such is sufficient under section 952, Penal Code. See also *People* v. *Ashley*, 42 Cal.2d 246, 258 [267 P.2d 271]; *People* v. *Corenevsky*, 124 Cal.App.2d 19, 23 [267 P.2d 1048].

■ There is no necessity that appellant be an employee of the May Company before he can be convicted of theft from

that company. Section 487 Penal Code reads in part as follows:

"1. When the money, labor or real or personal property taken is of a value exceeding two hundred dollars ($200); provided, that when domestic fowls, avocados, citrus or deciduous fruits, nuts and artichokes are taken of a value exceeding fifty dollars ($50); provided, further, that where the money, labor, real or personal property is taken by a servant, agent or employee from his principal or employer and aggregates two hundred dollars ($200) or more in any 12 consecutive month period, then the same shall constitute grand theft."

The part having to do with servants, agents and employees was added in 1955, and we conclude that the Legislature did not intend to limit grand theft to servants, agents and employees, but rather the Legislature intended that when the conditions referred to in the section above quoted obtained, that the crime would be grand theft and not a series of petty thefts. The cases cited by the appellant are not convincing because, first they are from other jurisdictions which do not have the statute in question, and secondly, the one California case cited by appellant was determined in 1870 long before the 1927 and 1929 liberalizing amendments to Penal Code, sections 951 and 952.

In this case ample evidence was introduced before the appellant's admissions were received in evidence to demonstrate that there had been substantial thefts; namely of nine dozen shirts worth $214.92, other shirts worth $1,480, and 15 cartons of sheets and 29 cartons of Presto cookers were missing. The missing merchandise never reached the marking area and could not be found in the building. The codefendant employees of May Company, as heretofore indicated, had no authority to remove any merchandise from the premises of May Company. A reasonable inference can be drawn therefrom that the corpus delicti of grand theft had been established. (*People* v. *Kross,* 112 Cal.App.2d 602, 609 [247 P.2d 44]; *People* v. *Brooks,* 154 Cal.App.2d 631, 634 [316 P.2d 435].) It is not necessary to establish the corpus delicti beyond a reasonable doubt and to a moral certainty. Slight or prima facie proof is all that is necessary. It can be shown by circumstances or by inferences drawn from the facts. (*People* v. *Kaye,* 43 Cal.App.2d 802, 809-810 [111 P.2d 679].)

As an appellate court, we are bound by the rule set forth in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] to the effect that we must assume in favor of the judgment

the existence of every fact which reasonably could be deduced from the evidence.

The merchandise was stolen. The appellant admitted that he had taken shirts, sheets, furniture and cookers from the May Company dock.

The purported appeal from the nonexistent order denying a new trial is dismissed.

The judgment is affirmed.

Lillie, J., and Shea, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.