[Crim. No. 39434. Second Dist., Div. Five. May 11, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
FREEMAN G. PACKARD, JR., Defendant and Appellant.

COUNSEL

Robert A. Wynn and Thomas Hunter Russell for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, J.—In a nonjury trial appellant was found guilty on three counts of grand theft. The court also found true that as to count III the loss exceeded $100,000, and as to count II the loss exceeded $25,000. (Pen. Code, § 12022.6.) The court sentenced appellant on count III to a midterm of two years in the state prison, plus two years under section 12022.6, subdivision (b), for a total of four years. Concurrent sentences on the other two counts were stayed pursuant to Penal Code section 654.

Appellant was employed by Paramount Studios as a production clerk. He became aware of the large amounts of money paid by the studio to outside agencies for typing and reproduction of scripts. Appellant formed his own business called Scripts Unlimited, and over a period of years Paramount Studios paid many thousands of dollars to Scripts Unlimited for reproduction of scripts. Viewed in the light most favorable to the judgment, the evidence indicates that the invoices from Scripts Unlimited to Paramount were completely fraudulent in that the scripts were not reproduced. Appellant and his roommate, who helped to prepare the phony invoices, lived a life of luxury at Paramount's expense. According to one accounting, from 1976 through 1978 Paramount paid Scripts Unlimited over $472,000 for script reproduction services. The checks were paid several times per month, and normally each payment was several thousand dollars.

■ Appellant's main contention is that he was improperly convicted on three counts. Count I alleged that he took money and personal property of a value exceeding $200 from Paramount Pictures, Inc., "on or about the year 1976." Similarly, counts II and III related to "the year of 1977" and "the year of 1978." Appellant contends that as a matter of law there was a single theft pursuant to one intention and general plan or scheme to steal money from Paramount. He relies on the well-established rule that in a series of takings from the same individual, there is a single theft if the takings are pursuant to one continuing impulse, intent, plan or scheme, but multiple counts if each taking is the result of a separate independent impulse or intent. (*People v. Bailey* (1961) 55 Cal.2d 514, 519 [11 Cal.Rptr. 543, 360 P.2d 39]; *People v. Richardson* (1978) 83 Cal.App.3d 853, 866 [148 Cal.Rptr. 120]; Annot. (1973) 53 A.L.R.3d 398.) He contends the only reasonable conclusion supported by the evidence is that all the takings were pursuant to one general intent and scheme. In any event, he argues, there is no reasonable basis in the record for concluding that appellant had three separate schemes, each based neatly on calendar years, as distinguished from either one general scheme or a separate theft for each invoice and payment. We find merit in appellant's argument.

Whether there were separate independent takings or one general scheme is a question of fact based on the particular circumstances of each case. (*People v. Bailey, supra*, 55 Cal.2d at p. 519; *People v. Sullivan* (1978) 80 Cal.App.3d 16, 21 [145 Cal.Rptr. 313].) However, respondent does not specifically contend that there is a basis in the evidence for an inference of fact that appellant had three separate yearly schemes. Rather respondent contends that three counts were properly charged based on the language of Penal Code section 487, subdivision 1, that "where the money, labor, real or personal property is taken by a servant, agent or employee from his principal or employer and aggregates two hundred dollars ($200) or more in any 12 consecutive month period, then the same shall constitute grand theft."

This provision, enacted in 1955, simply enables the prosecution, under specified conditions, to cumulate a series of petty thefts into a grand theft, without having to prove a single intent or scheme. (See *People v. Theodore* (1959) 174 Cal.App.2d 237, 242 [344 P.2d 393].) The provision does not purport to authorize multiple grand theft prosecutions where a series of takings over several years is done pursuant to a single impulse and plan. (See *People v. Sullivan, supra*, 80 Cal.App.3d at

p. 20.) In the absence of any evidence from which it could reasonably be inferred that appellant had three separate intents and plans, the only reasonable conclusion supported by the record is that appellant had a single continuing plan or scheme for stealing money from Paramount. (See Annot., *supra*, 53 A.L.R.3d at pp. 402-403, 409-415.) Appellant should have been convicted of only a single grand theft.

■     However, we do not agree with appellant's conclusions as to the effect on his sentence of this modification. Appellant contends that if there was only a single theft pursuant to one general intent and scheme, then "the crime" was "committed" in 1976, with the first charged theft, and the result, appellant claims, is that the enhancement pursuant to Penal Code section 12022.6 is inapplicable because that provision was not effective until July 1, 1977. This argument is wholly without merit. The evidence amply shows that appellant took more than $100,000 in 1978 as charged. Even treating the series of takings as a single theft, the crime was a continuing one, and appellant was properly subject to punishment for the amounts he continued to take after the effective date of the statute. (See *People* v. *Stanley* (1917) 33 Cal.App. 624, 626 [166 P. 596] [failure to provide for child]; *Samuels* v. *McCurdy* (1925) 267 U.S. 188, 193 [69 L.Ed. 568, 570, 45 S.Ct. 264, 37 A.L.R. 1378] [illegal possession of liquor]; *United States* v. *Goldberger* (3d Cir. 1952) 197 F.2d 330, 331 [conspiracy]; *Huff* v. *United States* (5th Cir. 1951) 192 F.2d 911, 914-915 [conspiracy]. See also *People* v. *Venegas* (1970) 10 Cal.App.3d 814, 822-823 [89 Cal.Rptr. 103]; *People* v. *Potter* (1966) 240 Cal.App.2d 621, 629 [49 Cal.Rptr. 892].) Having initiated the scheme in 1976 does not immunize appellant from punishment for his conduct in 1977 and 1978 which violated the laws then in existence. (*Samuels* v. *McCurdy, supra*, 267 U.S. 188.)

The fallacy of appellant's position is easily demonstrated by the fact that the prosecution could have charged appellant simply with grand theft committed after July 1, 1977, and could have cumulated all the subsequent checks in order to establish the enhancement for taking more than $100,000. (See *People* v. *Betley* (1957) 151 Cal.App.2d 810, 814 [312 P.2d 328]; *People* v. *Hughes* (1980) 112 Cal.App.3d 452, 460-461 [169 Cal.Rptr. 364].) Thus appellant is properly subject to a conviction of grand theft and an enhancement pursuant to Penal Code section 12022.6, subdivision (b), which is precisely what he got (count III, the count on which appellant was sentenced). We can simply affirm the judgment as to count III and reverse as to counts I and II. (See *People* v. *Richardson, supra*, 83 Cal.App.3d at p. 866.)

Appellant next contends that the court was without "jurisdiction" to impose a two-year enhancement pursuant to Penal Code section 12022.6, subdivision (b). He bases this argument on the fact that the clerk's minute order for September 17, 1980, states that appellant was found guilty as charged of violating Penal Code section 487, subdivision 1, on counts I, II, and III but makes no mention of Penal Code section 12022.6, and furthermore that the clerk's minute order of December 10, 1980, purports to correct the clerical error by adding that the special allegations in counts II and III are found to be true, but such minute order itself refers only to section 12022.6, *subdivision (a)*. There is no merit to appellant's point, because the record shows these were merely clerical errors. The reporter's transcript, which is controlling, clearly shows that the trial court found true the special allegation that the loss exceeded $100,000 on count III and that the court orally pronounced judgment thereon. (See *People v. Mesa* (1975) 14 Cal.3d 466, 471 [121 Cal.Rptr. 473, 535 P.2d 337].)

Appellant next contends that enhancement of his sentence pursuant to Penal Code section 12022.6 denies him equal protection of the law and constitutes cruel or unusual punishment. These contentions were rejected in *People v. Hughes, supra*, 112 Cal.App.3d 452, 457-463.

■ Appellant contends that the evidence is insufficient to establish that the loss was more than $100,000. Conceding that the prosecution showed that in some instances Scripts Unlimited had billed for the reproduction of scripts which were not then in existence or use, and that Scripts Unlimited had billed for some scripts which had actually been reproduced by other agencies, appellant contends that this evidence alone did not warrant a reasonable inference that the other billings by Scripts Unlimited were fraudulent. Appellant simply fails to acknowledge additional evidence which supported this inference. Appellant claimed that he had reproduced the scripts on Paramount's own copying machines by working after hours, mornings, nights and weekends. The evidence showed that this could not have happened. There were billings for lengthy periods when appellant was on vacation to Europe, hospitalized or recuperating from hernia surgery. Appellant's roommate-lover testified that appellant was home every night between 7 p.m. and 7 a.m. and that they were gone on trips together two or three weekends per month. The evidence concerning the schedules and personnel required by the legitimate script reproduction agencies to satisfy the nightly demand of the studio for retyping and reproduction of scripts supports the inference that appellant, who claimed to have done the copying alone,

could not have produced the huge number of pages claimed. Other evidence contradicting appellant's claim to have reproduced the scripts on company machines during off hours included that the copying machine at the print shop was locked during nonbusiness hours, that appellant did not acquire a key to the print shop until November 1978, and that appellant admitted to an employee that he did not know how to operate the model 9200 copying machine which was capable of big reproduction jobs. When appellant's roommate asked him what services were represented by the invoices the roommate was helping to prepare, appellant would become defensive and refuse to answer. Appellant also admitted securing phony expense records. Substantial evidence supports the finding on Penal Code section 12022.6. (*People* v. *Johnson* (1980) 26 Cal. 3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d 738].)

■ Finally, appellant contends the trial court erred in denying his motion for sanctions under *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]. On December 7, 1978, 22 file boxes were seized at appellant's home pursuant to a search warrant. The boxes contained file folders containing a number of Paramount production records. According to appellant's testimony at the hearing on the motion, these were records which appellant kept in the course of his employment at Paramount as a production assistant. Some of the file folders also contained scripts.

At the hearing, appellant claimed that when the boxes were at his home they also contained a number of scripts which had been reproduced by him, and that when he examined the boxes at the time of trial, these scripts were missing. He found 11 scripts which he thought had been reproduced by him,[1] but claimed about 75 additional scripts were missing. The theory of appellant's motion under *Hitch* was that these scripts had been lost because the district attorney's office had improperly handled the storage of the boxes after their seizure. Defense counsel suggested to the court that an appropriate sanction would be to strike the excessive taking allegations, on the theory that had the 75 scripts not been missing appellant might have demonstrated that he had reproduced some of the scripts for which Paramount had been billed.

The trial court denied the motion, commenting that it was not persuaded that the allegedly missing scripts were really missing. Sanctions

---

[1]Subsequent evidence at trial indicated that these 11 scripts had been reproduced by Paramount's legitimate script services, Ed Leavitt and Barbara's Place.

under *People* v. *Hitch, supra,* 12 Cal.3d 641, 649, are not appropriate unless evidence has been lost to the defendant as a result of the prosecution's failure to preserve it. (*People* v. *Cooper* (1979) 95 Cal.App.3d 844, 850-851 [157 Cal.Rptr. 348].) This case is unusual in that the only evidence that the allegedly missing scripts actually existed is the uncorroborated testimony of appellant. Here there was substantial evidence from which the trial court could reasonably conclude that the allegedly missing scripts never existed. It is a matter of speculation that any evidence was lost to appellant. (*Id.*) At a hearing on a motion pursuant to *Hitch,* the trial court sits as a trier of fact and its determination of the facts and resolution of conflicts in the evidence and the credibility of witnesses must be upheld if there is substantial evidence to support it. (*People* v. *Goss* (1980) 109 Cal.App.3d 443, 454 [167 Cal.Rptr. 224].)

No detailed inventory of the contents of the boxes was made at the time they were seized. However, shortly before the search warrant seizure, appellant had shown the files to Warren Larson, a Paramount vice president, who looked through them carefully. Looking through the boxes again at the time of trial, Mr. Larson testified that the contents appeared very much in order and in the same condition of fullness as when he saw them earlier. Also at the time of the seizure, District Attorney Investigator Gerald Loeb looked through the boxes for scripts with the name Scripts Unlimited and found none.[2]

Because the files appeared to constitute property of Paramount Studios,[3] and because the district attorney's office lacked storage space, the district attorney investigator arranged for the boxes to be stored pending trial in a locked room in Paramount's accounting building. It was understood that there were only two keys to the room, one of which was given to Investigator Loeb and the other of which was carried by Mr. Larson. Mr. Larson and Mr. Loeb checked the room again a few days later. It was locked and the boxes appeared in the same condition. However, on a subsequent occasion, Mr. Larson found some clerks and auditors working at a table in the room, which was a conference room. Those persons were not involved with the file boxes. On another occasion in February or March 1979, Investigator Loeb went to the room

---

[2]According to the evidence, neither appellant nor Ed Leavitt marked their scripts with an identifying name. The other legitimate reproduction agency, Barbara's Place, normally placed identification on reproduced scripts.

[3]According to appellant's own testimony, the production reports were records which appellant kept in his job as a production assistant. He kept some of these files at his home and some at the studios.

upon receiving a complaint from appellant's attorney of possible access to the room. He found a young lady working on an adding machine at the table. He chased her out, posted a sign on the door, and arranged for the boxes to be removed to the district attorney's office.

Thus, although appellant showed a possible breach in the security of the storage room, he made no persuasive showing there was any tampering with the contents of the boxes. The only persons actually found in the room had nothing to do with the boxes. No reasonable probability was shown that anyone had either the motive or the ability to go through the boxes removing scripts allegedly reproduced by appellant. Appellant testified that there was no way the scripts reproduced by him could be identified by anyone else since there was no special marking on them. Appellant himself was allegedly able to identify them only because he knew the work he had done. Most of the boxes were full and it would have required a mammoth effort to go through them picking out individual scripts, which were usually kept with the other production records. The trial court reasonably concluded that it was highly unlikely anything of this sort had occurred. Substantial evidence supports the court's rejection of appellant's uncorroborated claim that there was any missing evidence.

The judgment is affirmed as to count III and reversed as to counts I and II.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied June 10, 1982.