Filed 5/22/15  P. v. Swanson CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B255086 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. VA129656 & VA130499) |
| v. | |
| CASEY SWANSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. John A. Torribio, Judge.  Affirmed in part, and reversed in part.

Janet Uson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Marc A. Kohm and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Casey Swanson (defendant) challenges her convictions of 11 crimes and the resulting prison sentence of 23 years and 8 months.  She argues that (1) the trial court wrongly denied her request for new appointed counsel, (2) four of the convictions rest on insufficient evidence, (3) two of the convictions are duplicative of one another, and (4) the trial court erred in not staying three of the sentences under Penal Code section 654.[1]  We conclude that some of defendant's arguments have merit, and vacate one of the convictions, reduce another, stay two sentences, and recalculate her sentence to be 20 years and 4 months.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant is the self-proclaimed "mastermind" of a series of crimes in which she lured men to a location with the promise of sexual acts and, with the aid of armed men, robbed them of their belongings when they showed up.

In February 2013, Trung Nguyen (Nguyen) received a text message from a woman he met briefly at a New Year's Eve party, and the message directed him to a residence on Rosecrans Avenue in Compton, California.  When he arrived, a woman opened the door and retreated into the dark interior; when Nguyen followed, two men assaulted him, struck him in the face with a pistol, and demanded his wallet, car keys and cell phones. They warned him to remain in the house and left.  When Nguyen went outside, his car was gone.  Although Nguyen could not identify defendant at trial and took three tries to correctly identify her in a six-photo spread, defendant admitted to police that she "did it one time over there . . . [o]ver on Rosecrans" and a search of the Rosecrans residence turned up mail in her name.

In March and April 2013, defendant lured five other men to the same apartment in Los Angeles, California with ads posted to Craigslist promising sex acts, where she and male accomplices robbed them when they showed up.

When Abimael Urrutia (Urrutia) showed up, defendant invited him inside, where a

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

man demanded money. The man escorted Urrutia to his car; Urrutia then retrieved and handed over $20. When David Galvez (Galvez) showed up, defendant invited him inside the dark apartment, where a man holding a gun ordered him to empty his pockets, and took his cell phone and $200 from his wallet. A second man took Galvez's car keys and retrieved a leather jacket and backpack from his car. Jeffrey Honsinger (Honsinger) and Kevin Peters (Peters) were also accosted and robbed by armed men waiting inside the apartment.

When Daniel Gaw (Gaw) showed up, one man confronted him at gunpoint and another watched as defendant photographed Gaw's driver's license and family photos, and then ordered him to admit—while she video recorded the encounter—that prostitution was illegal. Defendant then took Gaw's cell phone, his business cards, and gift cards, and warned him that she would kill his family if he went to the police. The next day, defendant called and emailed Gaw at work and threatened to show the videotape to Gaw's wife and coworkers if he did not pay her $1,000.

When law enforcement conducted a search of the Los Angeles apartment, they recovered Gaw's wallet, items belonging to Peters, two replica firearms, and defendant's cell phone. Defendant's cell phone contained the contact information from Urrutia's and Galvez's phones, under the labels "paisa victim" and "fat nigga I robbed," respectively.

The People charged defendant with 11 crimes. As to Nguyen, defendant was charged with carjacking (§ 215, subd. (a)), assault with a firearm (§ 245, subd. (a)(2)), and second degree robbery (§ 211)—and the People further alleged that a principal in the carjacking and second degree robbery was armed with a firearm (§ 12022, subd. (a)(1)). As to Gaw, defendant was charged with first degree robbery as a home invasion robbery committed in concert with others (§§ 211, 213, subd. (a)(1)(A)), second degree robbery (§ 211), criminal threats (§ 422), and attempted extortion (§ 524). As to Urrutia, Galvez, Peters and Honsinger, defendant was charged, as to each, with a count of first degree robbery as a home invasion committed in concert with others (§§ 211, 213, subd. (a)(1)(A)).

3

The jury convicted defendant on all counts and found all allegations to be true.

The trial court imposed a sentence of 23 years and 8 months. As the base sentence, the court imposed a sentence of nine years on the carjacking of Nguyen with an additional year for a principal's use of a firearm. The court then imposed consecutive sentences of one-third the midterm for all remaining counts but one—that is, an additional 16 months for the second degree robbery of Nguyen, an additional year for assaulting Nguyen with a firearm, an additional two years for the first degree robbery of Gaw, an additional eight months for the attempted extortion of Gaw, an additional eight months for criminal threats against Gaw, and four additional two-year terms for the first degree robberies of Urrutia, Galvez, Peters and Honsinger. The court imposed, but stayed under section 654, a five-year sentence for the second degree robbery of Gaw.

Defendant timely appeals.

## DISCUSSION

### I.     Appointment of new appointed counsel

Defendant argues that all of her convictions must be overturned because the trial court erred in denying her request to appoint a different attorney to represent her. The Sixth Amendment guarantees the right to appointment of counsel, but not the counsel of defendant's choosing. (*People v. Suff* (2014) 58 Cal.4th 1013, 1040 [""The right to counsel of *choice* does not extend to defendants who require counsel to be *appointed* for them." [Citation.]""].) When a defendant asks a court to appoint a different attorney to represent her, the court must (1) offer the defendant an opportunity to explain why she wants a different lawyer, and (2) decide whether the appointment of new counsel is warranted because (a) the current lawyer is not providing adequate representation or (b) that lawyer and the defendant are so embroiled in an irreconcilable conflict that ineffective representation is likely to result. (*People v. Abilez* (2007) 41 Cal.4th 472, 487-488 (*Abilez*); *People v. Clark* (2011) 52 Cal.4th 856, 912 (*Clark*); see generally *People v. Marsden* (1970) 2 Cal.3d 118, 123.) Defendant asserts that the trial court's inquiry into her reasons was inadequate and that the court abused its discretion in

4

evaluating the necessity for new counsel. (*Abilez*, at p. 488.) We reject both claims.

Defendant asked for new counsel twice. Six months before trial, she told the trial court that she was not receiving effective representation. The trial court halted the proceedings, excused the prosecution, and asked defendant why she had a complaint against her counsel. Defendant stated that her counsel had "a bad attitude," that she and counsel would engage in "cussing match[es]," and that counsel could not "communicate with her." Counsel then explained that defendant was unhappy with counsel's recommendation that defendant waive her speedy trial rights in order to give the People time to file further charges and to pursue a global settlement of *all* charges. When the court noted the logic of that tactic, defendant stated she had no "problem with that," and the trial court denied defendant's request on the ground that counsel was providing effective representation.

Two days before trial, defendant again requested new appointed counsel. After again excusing the prosecution, the trial court invited defendant three separate times to explain why, and she stated she had a "big conflict of interest" with her attorney and that "there's no communication." Defendant's counsel explained that defendant was upset because the probationary sentence defendant wanted to negotiate was not, in counsel's view, feasible given the charges and the state of the evidence. The trial court found no deficient representation and again denied defendant's motion.

As these colloquies indicate, the trial court gave defendant ample opportunity to explain the basis for her request—going so far as to solicit her input three times during the second hearing. No more is required.

The trial court also did not abuse its discretion in denying defendant's request on the merits. Defendant's chief complaints are that (1) she disagreed with counsel on the tactical wisdom of waiting for further charges to be filed and on pursuing a plea deal for a probationary sentence, and (2) she and counsel had a personality clash, likely stemming from their tactical disagreements. Neither evinces incompetence of counsel, and neither constitutes sufficient grounds for the appointment of new counsel. (See *Clark*, *supra*, 52

5

Cal.4th at p. 912 [""""Tactical disagreements between the defendant and [her] attorney do not constitute an 'irreconcilable conflict.'"""], quoting *People v. Jackson* (2009) 45 Cal.4th 662, 688; *People v. Myles* (2012) 53 Cal.4th 1181, 1207 [defendant's "'claimed lack of trust in, or inability to get along with, an appointed attorney'" are not "'sufficient to compel appointment of substitute counsel'"].)

## II.     Sufficiency of the evidence

Defendant next argues that there is insufficient evidence to support the jury's verdicts as to her crimes against Nguyen and Urrutia.  In evaluating the sufficiency of the evidence, we ask whether the verdict is supported by evidence that is reasonable, credible and of solid value.  (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069.)  In so doing, we must view the evidence in the light most favorable to the verdict as well as draw all reasonable inferences that support the verdict.  (*Ibid.*; *People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  Applying these standards, we reject defendant's challenge to the three counts involving Nguyen, but agree that there is insufficient evidence to support the first degree robbery charge against Urrutia.

### A.     *Nguyen*

Defendant's attack on the carjacking, second degree robbery, and assault with a firearm charges involving Nguyen boils down to the contention that there was insufficient evidence that *she* was the woman who contacted Nguyen and invited him into the residence on Rosecrans Avenue in Compton.  Defendant points to the shakiness of Nguyen's identification of her, and to the difference in the modis operandi as compared with the other counts (namely, that Nguyen was not lured from a Craigslist ad).  Defendant's arguments give short shrift to the evidence tying her to the crime—namely, her admission that she "did it one time . . . [o]ver on Rosecrans," the recovery of *her* mail at the Rosecrans address, and, with the exception of the location and initial "bait," the striking similarities between the robbery of Nguyen and of the other men (that is, contact via email or text message inviting them to a home, defendant inviting them inside a darkened residence, the subsequent assault and robbery by men with guns).  What is

6

more, the equivocal nature of Nguyen's identifications is consistent with Nguyen's testimony that they met briefly at the New Year's Eve party and with defendant's admission that she opened the door and walked away. This is ample evidence from which a jury could find that defendant aided and abetted the two men in robbing, assaulting and carjacking Nguyen.

### B. Urrutia

Defendant mounts two challenges to the evidence supporting the first degree home invasion robbery count involving Urrutia: (1) Urrutia was not robbed inside an "inhabited dwelling house"; and (2) defendant did not act in concert with two other people. Section 213, subdivision (a)(1)(A) elevates a second degree robbery to first degree if the defendant "voluntarily acting in concert with two or more other persons, commits the robbery within an inhabited dwelling house." (§ 213, subd. (a)(1)(A).) A robbery is committed when "personal property in the possession of another" is "tak[en]" "from [the victim's] person or immediate presence" "against his will" by "means of force or fear." (§ 211.) In this case, defendant's cohorts took the $20 from Urrutia when he was outside, near his car, so the robbery was not "committed" in an "inhabited dwelling house." The conviction must accordingly be reduced to second degree robbery.

The People resist this conclusion, arguing that *People v. Frye* (1998) 18 Cal.4th 894 (*Frye*) authorizes a robbery conviction as long as the defendant's intent to rob is formed while inside the inhabited dwelling house. However, *Frye* dealt with a defendant who entered a house, shot the two victims, and then took items from them; the question in *Frye* was whether Frye took the items from the dead victims' "person or immediate presence," and the court concluded he did because he had formed the intent the rob before he killed them. (*Id.* at pp. 955-956.) *Frye* had nothing to do with inhabited dwelling houses, and its logic does not support the People's proffered rule that a robbery is subject to enhanced penalty if the robbers and victims were in an inhabited dwelling at any point prior to the robbery itself. Because we vacate this conviction and reduce the conviction to second degree robbery on this ground, we need not reach defendant's

7

alternative contention for doing so.

## III. Duplicative conviction

Defendant contends she cannot stand convicted both of the second degree robbery and the first degree (home invasion) robbery of Gaw stemming from the same underlying conduct. Although a defendant can generally be convicted of multiple offenses for the same conduct (§ 954), she cannot stand convicted of both a crime and its lesser-included offense because, by definition, the crime contains every element of the lesser-included offense and convictions of both mean she is twice convicted of the lesser-included crime. (*People v. Medina* (2007) 41 Cal.4th 685, 702; *People v. Reed* (2006) 38 Cal.4th 1224, 1227.) Because there is no question that second degree robbery is a lesser-included offense to first degree robbery (cf. *People v. Packard* (1982) 131 Cal.App.3d 622, 626), the People concede that the trial court erred in staying the second-degree robbery conviction rather than vacating it. We agree, and order the conviction vacated.

## IV. Sentencing

Defendant lastly argues that the trial court erred in not staying, under section 654, the sentences for two out of the three counts involving Nguyen and for the criminal threats count involving Gaw. Section 654 prohibits multiple punishments for "[a]n act or omission." (§ 654, subd. (a).) A court must therefore impose sentence on the crime with the "longest potential term of imprisonment" and impose but stay the sentences for all other crimes that are part of the same "course of conduct" if all of those crimes together "comprise[] an indivisible transaction." (*People v. Coleman* (1989) 48 Cal.3d 122, 162 (*Coleman*); *People v. Islas* (2012) 210 Cal.App.4th 116, 129 (*Islas*).) "'"Whether a course of criminal conduct is divisible . . . depends on the *intent and objective* of the actor."'" (*People v. Galvez* (2011) 195 Cal.App.4th 1253, 1262, quoting *People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) Where all of the offenses are "'merely incidental to, or were the means of accomplishing or facilitating one objective,'" section 654 requires the sentence for all but one offense to be stayed; if the defendant harbored multiple criminal objectives, no stay of sentence is required. (*Ibid.*) The inquiry into a

8

defendant's intent and objectives is a question of fact reviewed for substantial evidence. (*Islas*, at p. 129.)

### A.     Nguyen

We agree with defendant that the robbery, assault with a firearm and carjacking of Nguyen were accomplished with a single objective—namely, robbing Nguyen.  In *People v. Bauer* (1969) 1 Cal.3d 368, our Supreme Court held that a defendant's acts of robbing three victims and subsequently stealing their car were indivisible parts of a single objective—theft—for which multiple punishments were not to be imposed.  (*Id.* at pp. 375-377.)  The same is true here, as defendant's cohorts' actions in pistol whipping Nguyen, robbing him of his personal effects and taking his car were part of a single, seamless transaction effected with a single intent.  Because substantial evidence does not support a finding of separate intent or objective, the sentences for robbery and assault with a firearm involving Nguyen must be stayed.

### B.     Gaw

We disagree with defendant that the criminal threats conviction involving Gaw must be stayed.  As recounted above, the robbery of Gaw was largely complete by the time defendant threatened Gaw's family.  More importantly, her acts of photographing his driver's license and family photos were unnecessary to the robbery, and made defendant's threats of killing them all the more real.  Substantial evidence accordingly supports the trial court's implied finding that defendant had a separate intent and objective, and that section 654 did not mandate a stay of the criminal threats sentence.

**DISPOSITION**

We vacate the conviction for count 1 (the second degree robbery of Gaw) and reduce the conviction for count 8 (the first degree robbery of Urrutia) to second degree robbery (with a resulting reduction to a consecutive sentence from two years to one year). We also order the sentences on count 5 (the second degree robbery of Nguyen) and count 7 (the assault with a firearm of Nguyen) stayed.  The trial court is ordered to prepare and

9

forward to the California Department of Corrections and Rehabilitation a modified abstract of judgment to reflect that defendant's sentence is 20 years and 4 months.

As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
                    HOFFSTADT

We concur:


_____, Acting P. J.
        ASHMANN-GERST


_____, J.
        CHAVEZ