Filed 11/13/15  P. v Austin CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041449 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1355430) |
| v. | |
| EDWARD LEON AUSTIN, | |
| Defendant and Appellant. | |

Defendant Edward Leon Austin was convicted by jury trial of one count of making criminal threats (Pen. Code, § 422),[1] one count of felony false imprisonment (§§ 236, 237), five counts of grand theft of a firearm (§§ 484, 487, subd. (d)), one count of first degree robbery (§§ 211, 212.5, subd. (a)), and one count of first degree burglary (§§ 459, 460, subd. (a)).  The court also found true multiple prior convictions.  Defendant was sentenced to a total term of 175 years to life plus 63 years in prison.

On appeal, defendant challenges his five convictions for grand theft of a firearm.  He argues that these five convictions all stemmed from the same theft.  Therefore, under *People v. Bailey* (1961) 55 Cal.2d 514 (*Bailey*), he insists that four of his grand theft convictions must be reversed.  We agree and reverse the judgment.

---

[1] Unspecified statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

*The Information*

On April 4, 2014, defendant and codefendant, Amber Sapp, were charged by a second amended information with first degree robbery (§§ 211, 212.5, subd. (a), count 1), first degree burglary (§ 459, count 2), assault with a firearm (§ 245, subd. (a)(2), count 3), making criminal threats (§ 422, count 4), false imprisonment (§ 236, count 5), and five counts of grand theft (§§ 484, 487, counts 6-10). As to count 1, it was also alleged that the victim was 65 years of age or older (§ 667.9, subd. (a)), and that defendant was armed with a handgun (§ 12022.53, subd. (b)). As to counts 2 through 5, it was alleged that defendant personally used a handgun (§ 12022.5, subd. (a)). The information further alleged that defendant had seven prior strike convictions (§§ 667, subds. (b)-(i)) and two prior serious felony convictions (§ 667, subds. (a), (b)).

*The Crime*

On January 8, 2013, two individuals rang the doorbell of victim John Sheehan's house. Sheehan's live-in helper and roommate, Marcelle Gourley, answered the door. Sheehan heard voices and saw Gourley walk towards him after answering the door. Someone grabbed Sheehan's cane and pushed him and Gourley to the floor. Sheehan heard a male voice say: "Stay right down there, old man, and you won't get hurt." Sheehan was unsure if the individuals were armed. At trial, he testified that he thought he saw a weapon.

Sheehan said that Gourley was taken to a different part of the house. Sheehan managed to pull himself off the floor, and he saw two individuals take his television set off the wall. He could not see their faces. Eventually, Sheehan heard Gourley say that the intruders had left. Gourley called the police. Sheehan also spoke with the 911 operator, but could not recall if he had told them that the individuals had threatened to

2

shoot him.  The individuals took Sheehan's guns, his television set, his wallet with his driver's license and credit cards, and some watches.

Gourley identified defendant at trial and said she had never seen him before the robbery.  She said defendant had come into the house and had threatened to shoot her.  She thought he had a gun, because defendant placed something against her head that felt like a steel rod.  Eventually, defendant put a pillowcase over Gourley's head and took her to the master bedroom.  He asked Gourley where the gold and cash were.  Based on the sound of shuffling feet, Gourley thought there were two individuals in the room.  However, she did not hear a second voice and did not hear defendant mention a second person.

Defendant loosely tied Gourley's hands and legs and placed a mattress on top of her.  He told her to count to 200.  As Gourley counted, she heard noises that sounded like things were being taken outside.  When it got quiet, she freed herself and went over to Sheehan.  Gourley's cell phone, cigarettes, tennis shoes, and $5 were taken.  Gourley told police that she believed that a friend, Amber Sapp, was involved in the robbery.  Gourley had introduced Sheehan to Sapp, and Sapp had done some housecleaning work for Sheehan in December 2012.  In the past, Sapp had occasionally stayed over at Sheehan's house in Gourley's room.  Police recovered three fingerprints from the master bedroom door that were a match to Sapp.

On January 9, 2013, someone attempted to use Sheehan's Target credit card to make a purchase, which was declined.  Someone also attempted to use one of Sheehan's other credit cards to complete the purchase but that card was also declined.

Defendant had been wearing an electronic monitoring ankle bracelet the date that Sheehan's home was invaded.  Records reflected that he was at Sheehan's home during the robbery.  Records also showed that he was at a Target store on January 9, 2013.

3

Eventually, Sapp was located at a detention facility in Albuquerque, New Mexico. She was transported to San Jose by one of the officers investigating the robbery. The officer noticed that Sapp was wearing tennis shoes that matched the description of Gourley's missing tennis shoes. Sapp admitted to the officer that the shoes were Gourley's.

*The Verdict and Sentencing*

After a jury trial, defendant was found guilty of all counts except for count 3, assault with a firearm. Instead, defendant was found guilty of a misdemeanor simple assault. The jury also found the enhancements for personal use of a weapon not to be true. However, the jury found the age enhancement alleged as to the robbery count to be true.

Following a court trial, the court found defendant's prior convictions to be true. After denying defendant's *Romero*[2] motion, the trial court sentenced defendant to a total term of 175 years to life plus 63 years in prison. Defendant was sentenced to five consecutive sentences of 25 years to life for his five convictions of grand theft and was also sentenced to consecutive terms of 25 years to life for his convictions for making criminal threats and false imprisonment. He was also sentenced to two 25-year-to-life terms for his convictions for robbery and burglary, which were stayed under section 654. The trial court also stayed a one-year enhancement for the robbery conviction under section 667.9, subdivision (a). The trial court also imposed 12 five-year enhancements for his prior serious felony convictions (§ 667, subd. (a)) and one three-year enhancement for his prior prison term (§ 667.5, subd. (a)). Defendant was awarded a total of 660 days of custody credit and was ordered to pay various fines and fees, including $5,120 in

---

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

4

victim restitution.  The victim restitution order was made on a joint and several basis with Sapp.  Defendant appealed.

**DISCUSSION**

Defendant's sole argument on appeal is that four of his five convictions for grand theft of a firearm must be reversed, because they arose out of the same theft.

1. *Grand Theft of a Firearm and the* Bailey *Doctrine*

   a. **Overview**

Section 487, subdivision (d)(2) provides that grand theft is theft committed when the property taken is "[a] firearm."  All five of defendant's convictions of grand theft of a firearm arose from the theft of guns from Sheehan's home during the January 2013 robbery.  Defendant was charged with a separate offense for each stolen firearm and was found guilty of each charge.

A criminal defendant cannot be punished multiple times for the same criminal act if it is committed with the same intent or objective.  (*People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1517; § 654.)  "However, as a general matter, a criminal defendant can suffer multiple *convictions* for a single criminal act or series of related criminal acts."  (*People v. Kirvin*, *supra*, at p. 1517; § 954.)  The People need not elect between different offenses or counts in an accusatory pleading.  (§ 954.)

This general rule is subject to an exception carved out by our Supreme Court in *Bailey*, *supra*, 55 Cal.2d at page 519.  In *Bailey*, the defendant received multiple welfare payments as a result of a single fraudulent act.  Each payment would have only amounted to petty theft, but the aggregate total of payments received amounted to grand theft.  The *Bailey* defendant was convicted of one count of grand theft, which the Supreme Court found proper.  (*Id*. at pp. 515-516.)  Thus, *Bailey* concerned whether petty thefts could be aggregated to a single count of grand theft.  However, *Bailey* also asserted that a defendant cannot be convicted of more than one grand theft if all the theft or takings are

5

committed against a single victim pursuant to the same general impulse, plan, and intention. *Bailey* concluded that "a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan." (*Id*. at p. 519.) "Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case." (*Ibid*.)

Following *Bailey*, appellate courts have interpreted its decision as holding that if a defendant commits a series of takings from one victim pursuant to the same impulse, intent, plan or scheme, he only commits one theft. (See *People v. Packard* (1982) 131 Cal.App.3d 622, 626, disapproved of by *People v. Whitmer* (2014) 59 Cal.4th 733 (*Whitmer*).) Courts have also generally held that " '[w]hen a defendant steals multiple items during the course of an indivisible transaction involving a single victim, he commits only one robbery or theft notwithstanding the number of items he steals.' " (*People v. Ortega* (1998) 19 Cal.4th 686, 699, overruled on other grounds in *People v. Reed* (2006) 38 Cal.4th 1224, 1228-1232; see also *Bailey*, *supra*, 55 Cal.2d at p. 519.)

Our Supreme Court revisited its decision in *Bailey* in *Whitmer*, *supra*, 59 Cal.4th 733. In *Whitmer*, the defendant arranged for the fraudulent sale of 20 motorcycles and other recreational vehicles over the course of 13 days. (*Id*. at p. 735.) He was subsequently convicted of 20 counts of grand theft, one count for each fraudulent sale. The defendant appealed, arguing that under the *Bailey* doctrine he could only be convicted of one grand theft because he had operated pursuant to a single scheme. Our Supreme Court rejected the defendant's arguments, finding that *Bailey* did not bar multiple convictions of theft if they are separate and distinct, even if the thefts are committed pursuant to a single overarching scheme or plan. (*Id*. at p. 741.) *Whitmer*'s interpretation of *Bailey* disapproved of appellate court decisions that had concluded that *Bailey* shielded defendants from multiple convictions of theft if each theft was committed

pursuant to a single criminal intention, even if the takings were separate and distinct. (*Ibid.*)

However, noting the "long, uninterrupted series of Court of Appeal cases . . . that have consistently held that multiple acts of grand theft pursuant to a single scheme cannot support more than one count of grand theft," *Whitmer* concluded that its decision was an "unforeseeable judicial enlargement of criminal liability for multiple grand thefts." (*Whitmer*, *supra*, 59 Cal.4th at p. 742.) Therefore, *Whitmer* held that its decision could only be applied prospectively. (*Ibid.*) Consequently, even if *Whitmer* compelled a different conclusion based on the facts of defendant's case, it is inapplicable here. Like the defendant in *Whitmer*, defendant committed his underlying offense in 2013, prior to our Supreme Court's decision in *Whitmer*. We must therefore analyze his claims under the pre-*Whitmer* doctrine set forth in *Bailey* and the cases interpreting *Bailey*.

b. **Standard of Review**

We review the judgment for substantial evidence. "As with all factual questions, on appeal we must review the record to determine whether there is substantial evidence to support a finding that the defendant harbored multiple objectives. [Citations.] The *Bailey* doctrine applies as a matter of law only in the absence of any evidence from which the jury could have reasonably inferred that the defendant acted pursuant to more than one intention, one general impulse, or one plan." (*People v. Jaska* (2011) 194 Cal.App.4th 971, 984.)

c. **Application to Defendant's Case**

Here, there is no evidence that defendant committed separate or distinct thefts, or that he acted pursuant to a separate scheme regarding the theft of each individual firearm. All five firearms were stolen during the same indivisible transaction, the robbery that took place at Sheehan's home. They all involved the same victim. Further, all evidence indicated the thefts were all part of the same general intent, impulse, and plan. There was

7

no evidence suggesting anything otherwise. There was also no testimony that would support an inference that the guns were taken separately, such as any testimony by Sheehan or Gourley that defendant entered and exited the house multiple times to take guns. Gourley testified only that she heard shuffling that sounded like people were taking items out of the house over the course of several minutes.

Accordingly, absent any evidence to the contrary, the jury could not have reasonably inferred that defendant acted pursuant to more than one intention, impulse, or plan. Under *Bailey*, four of the five convictions cannot stand and must be reversed.

2. *Theft of Each Firearm as a Separate Offense*

The People do not argue that there is evidence that defendant harbored multiple intents, impulses, or plans. Rather, they argue that the language of the grand theft of a firearm statute (theft of "[a] firearm," § 487, subd. (d)(2)) is indicative that each firearm theft should be treated as a separate offense. Therefore, they claim that *Bailey* is inapplicable to this specific crime.

The People urge us to follow the Florida Supreme Court's decision in *Grappin v. State* (Fla. 1984) 450 So.2d 480. There, the court found that the defendant's theft of six firearms during a single burglary was the proper basis of six separate convictions of grand theft. (*Id*. at p. 482.) The Florida Supreme Court reasoned that the Legislature's "use of the article 'a' [as opposed to a plural article] in reference to 'a firearm' in [the Florida statute] clearly show[ed its intent] to make each firearm a separate unit of prosecution." (*Ibid*.)

The People also rely on a similar case from Wisconsin, *State v. Trawitzki* (Wisc. 2001) 244 Wis.2d 523. Similar to *Grappin*, *Trawitzki* concluded that the defendant was properly convicted of 10 theft charges for stealing 10 firearms because the Legislature's use of the singular word "firearm" in its statute indicated its intent that each firearm theft would constitute a separate charge. (*Id*. at p. 543.)

8

We decline to follow either *Grappin* or *Trawitzki*. In California, the Penal Code specifies that throughout the code "the singular number includes the plural, and the plural the singular." (§ 7.) Therefore, the Legislature's use of the singular pronoun "a" when referring to grand theft of a firearm is not indicative of an intent to treat each firearm theft as a separate offense.

3. *Applicability of the* Bailey *Doctrine to Grand Theft of a Firearm*

The People also insist that *Bailey* should not apply to the crime of grand theft of a firearm, because "such an action would fail to account for the greatly increased danger inherent in the theft of multiple deadly weapons." In essence, the People claim that there is an inherently greater risk of danger when the theft involves firearms. However, our Supreme Court set forth the rule in *Bailey*, *supra*, 55 Cal.2d at page 519, which we are bound to follow. (*Auto Equity Sales*, *Inc*. *v*. *Superior Court* (1962) 57 Cal.2d 450, 455.) And, as defendant notes in his reply brief, "[i]f the [L]egislature wishes to discourage multiple thefts of weapons, it can amend Penal Code section 487 to state that the theft of each firearm is a separate offense."

Consequently, the People's reliance on *People v*. *Correa* (2012) 54 Cal.4th 331 is misplaced. In *Correa*, our Supreme Court concluded that "a felon who possesses several firearms is more culpable than one who possesses a single weapon." (*Id*. at p. 342.) Therefore, "[t]o apply the section 654 bar punishment for multiple violations of the weapons possession statute here would mean that once a felon has acquired one firearm, ' "he may thereafter with impunity" ' acquire as many guns as he wishes, at least as long as he keeps his arsenal in one place and is arrested while possessing all of its contents." (*Id*. at pp. 342-343, fn. omitted.) However, the Legislature made it clear in enacting former section 12001, subdivision (k) (now section 23510) that possession of *each* firearm is a separate and distinct offense. (*People v*. *Correa*, *supra*, at pp. 345-346.) Section 23510, subdivision (a) expressly states that "each firearm constitutes a distinct

9

and separate offense . . . ." In contrast, the Legislature has not included similar language in section 487, subdivision (d) that would specify that each firearm theft is a separate and distinct offense.

4. *Resentencing*

The People assert that if this court were to reverse any of defendant's convictions for grand theft, the matter should be remanded for resentencing. We agree. Here, defendant was convicted of multiple counts and was sentenced to an aggregate prison term. "[A] defendant's aggregate prison term . . . 'cannot be viewed as a series of separate, independent terms, but rather must be viewed as one prison term made up of interdependent components. The invalidity of some of those components necessarily infects the entire sentence . . . . In making its sentencing choices in the first instance the trial court undoubtedly considered the overall prison term to be imposed . . . . When defendant successfully urged the illegality of his sentence on appeal the illegality did not relate only to the portion of the sentence but infected the whole.' " (*People v. Burns* (1984) 158 Cal.App.3d 1178, 1183 (*Burns*).)

Accordingly, resentencing is appropriate in this case, so long as the sentence on remand is not longer than the original term imposed. (*Burns*, *supra*, 158 Cal.App.3d at p. 1183.)

## DISPOSITION

The judgment is reversed and remanded for resentencing. On remand, the trial court shall strike defendant's convictions for grand theft in counts 7 through 10 and the corresponding sentences, leaving one conviction of grand theft intact.

_____
Walsh, J.[*]

WE CONCUR:


_____
Rushing, P.J.


_____
Elia, J.


_____

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.